Donald H. OLSEN, Jr., Appellant,

v.

Daniel COOPER, Appellee.

No. 01-00-00517-CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 20, 2000.

Rehearing Overruled Aug. 22, 2000.

---

Mark W. Stevens, Galveston, for appellant.

Charles M. Kinsey, Pearland, for appellee.

Panel consists of Justices MIRABAL, WILSON, and DUGGAN.*

## OPINION

MARGARET GARNER MIRABAL, Justice.

In this accelerated appeal of an election contest suit, appellant challenges the trial court's ruling setting aside the outcome of a primary runoff and ordering a new election. We reverse.

### Case Background

The parties vie for the position of Constable for Precinct Eight of Galveston County. Daniel Cooper is the incumbent; Donald H. Olsen, Jr. is the challenger.

Cooper and Olsen competed against two other candidates in the Republican primary election, held March 14, 2000. Because no candidate received a majority of the votes, a runoff primary election was necessary for the two candidates having the highest number of votes—Cooper (1396 votes) and Olsen (598 votes). Tex. Elec.Code Ann. § 172.004 (Vernon 1986). The winner of the primary runoff would effectively win the entire election because there is no Democratic party contender.

The outcome of the runoff election is at issue here. The primary runoff consisted of five days of early voting, held from April 3 through April 7, 2000, and one full day of voting on April 11, 2000. Olsen won

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

the runoff election by a count of 673 to 598 (a margin of 75 votes).

On April 24, 2000, Cooper filed suit seeking to set aside the outcome of the election, alleging it was not the true outcome because "an election officer or other person officially involved in the administration of the election prevented eligible voters from voting, failed to count legal votes, or made a mistake." Specifically, Cooper asserts two mistakes at the Friendswood polling place caused the election to go awry: (1) a ballot error and (2) allegedly locked doors. The parties do not dispute that a ballot error occurred and was corrected. They do, however, dispute whether doors were locked.

Following a brief bench trial, held May 1, 2000, the trial court set aside the election and ordered a new runoff election. Olsen filed a motion for new trial, asserting he had inadequate notice of the trial and complaining about insufficiency of the evidence. Following an extensive hearing on May 12, the trial court denied Olsen's motion for new trial.

Olsen now raises seven issues, seeking to reverse the trial court's judgment and confirm the outcome of the April 11 primary runoff. Olsen challenges Cooper's authority to pursue this election contest by virtue of Cooper's bankruptcy, the legal sufficiency of the evidence, the denial of his motion for new trial, and the adequacy of the notice to Olsen of the May 1 trial.

## Burden of Proof and Standard of Review

To set aside the outcome of the election, Cooper bore the burden of proving (1) violations of the Election Code occurred and (2) that they materially affected the outcome of the election. *Honts v. Shaw,* 975 S.W.2d 816, 822 (Tex.App.-Austin 1998, no pet.); *Slusher v. Streater,* 896 S.W.2d 239, 241 (Tex.App.-Houston [1st Dist.] 1995, no writ). The outcome of an election is "materially affected" when a different and correct result would have been reached in the absence of the irregu-

larities. *See Slusher,* 896 S.W.2d at 241; *Guerra v. Garza,* 865 S.W.2d 573, 576 (Tex.App.-Corpus Christi 1993, writ dism'd w.o.j.); *Green v. Reyes,* 836 S.W.2d 203, 208–11 (Tex.App.-Houston [14th Dist.] 1992, no writ).

The contestant's burden is a heavy one and the declared results of an election will be upheld in all cases except where there is clear and convincing evidence of an erroneous result. *Reyes v. City of Laredo,* 794 S.W.2d 846, 848 (Tex. App.-San Antonio 1990, no writ). The clear and convincing standard requires more proof than the preponderance of the evidence standard in ordinary civil cases, but less than the reasonable doubt standard in criminal cases. *In the Interest of K.C.M.,* 4 S.W.3d 392, 395 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). This standard is the degree of proof that will produce in the mind of the trier of fact a "firm belief or conviction" as to the truth of the allegations sought to be proved. *Id.* This Court reviews the record in an election contest to see whether the trial court abused its discretion. *Honts,* 975 S.W.2d at 822; *Slusher,* 896 S.W.2d at 241.

## Sufficiency of the Trial Evidence

In issue three, Olsen challenges the legal sufficiency of the evidence presented at the May 1 trial, arguing there is no evidence that the election irregularities "materially affected the outcome of the election," i.e., that at least 75 votes were affected by the irregularities. Olsen thus asserts the trial court abused its discretion by setting aside the election outcome.

In reviewing the legal sufficiency of the evidence in a non-jury case without findings of fact, but with a reporter's record, as here, we apply the same standard of review to the implied findings as we would apply to a jury's findings. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 83–84 (Tex.1992); *Giangrosso v. Crosley,* 840 S.W.2d 765, 769 (Tex.App.-Houston [1st Dist.] 1992, no writ). Accordingly,

we sustain a legal sufficiency challenge only if, considering the evidence and reasonable inferences in the light most favorable to the findings, there is not more than a scintilla of evidence supporting it. *Minnesota Mining & Mfg. Co. v. Nishika Ltd.,* 953 S.W.2d 733, 738 (Tex.1997); *Bond v. Kagan–Edelman Enters.,* 985 S.W.2d 253, 256 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

During the very brief trial, Cooper testified himself, plus he called eight witnesses; Olsen did not testify and he did not call any witnesses, nor did he cross-examine any of Cooper's witnesses.[1]

Cooper testified first. He explained there were two polling places for the election, the Friendswood City Hall and a county annex in League City. The election mishaps occurred only at the Friendswood location. The ballot problem involved the omission of both Cooper's and Olsen's names from the printed ballot. Cooper learned about this problem on Tuesday, April 4, the second day of early voting. Later that same day, the election officials manually corrected the display ballot posted on the main glass doors to city hall with a post-it note containing both names.

With regard to the alleged locked door problem, Cooper testified, "We discovered that historically, from 7:00[to] 8:00 o'clock in the morning and from 5:00 to 7:00 o'clock at night during the early voting hours, that the front door was manually locked; and the back door was electronically locked the majority of the time."[2] Cooper "felt" that "many voters" had been prevented from voting because they could not get into the building. He said, "[P]eople started coming to me to apologize or feeling sorry for me—well, we're so sorry you lost. I couldn't get in to vote. I tried." Cooper did not state the number

of people who told him this. He did state that he found out about the problem with the back door when he was at the Friendswood polling place about 6:15 p.m. on the second day of early voting, Tuesday, April 4. At that time, he saw Barbara Clary with her husband, and "She mentioned at that point, they had to walk from the back door to the front door. The back door was locked." The Clarys then proceeded to enter through the front door so they could "handle this" with the election officials.

Cooper also stated that he did not "feel" the election outcome represented the will of the people because he had outpolled Olsen "four to one" in Friendswood during the March primary election, and the early voter turnout in the runoff election in Friendswood was much lower than normally occurred during elections, "about 25 percent of the norm." He said that historically Friendswood was his strongest voting area, "That's where I get about 85 percent of the votes."

Two other witnesses testified about the incomplete ballot. William Cooper (no relation to the candidate) testified about discovering the ballot error. He and his wife, Alice, were early voting at city hall on the second day of early voting, Tuesday, April 4 between 11:00 and 11:30 a.m. As he scanned his ballot, William Cooper noticed that neither Cooper's nor Olsen's names were on the ballot, and he reported the problem to the election official. William Cooper's candidate choice was Cooper, and when the election official asked him if he could come back at a later time to vote, William Cooper indicated that he would. His wife, Alice, had already voted.

James Bacon, an assistant County Clerk, also testified about the ballot. Bacon explained that he learned on the second day of early voting, Tuesday, April 4,

---

1. In issue seven, Olsen complains he was not given adequate notice of the May 1 trial, resulting in his appearance at trial unprepared and without an attorney. Because of our disposition of issue three, we do not reach the merits of issue seven.

2. We note that the testimony of Cooper's own witnesses, summarized hereafter, conflicted regarding the nature and severity of the door problem.

that the Constable 8 Precinct race had been left off the ballots for Friendswood. Bacon testified that, in order to address the problem, manually corrected comparable ballots—the League City ballots—were used at the Friendswood polling place until corrected ballots were printed and delivered to Friendswood on Thursday, April 6.

Cooper called six witnesses to testify about the city hall doors during the runoff election. John Branson, the director of community services for Friendswood, testified that he received two notices during the runoff election that the back door was locked, but both times he checked he found the doors were unlocked.

Delores McKinsey, the Friendswood city secretary, said that she had no trouble getting into city hall at 7:30 a.m. on Monday, April 3; the doors were unlocked. She did not know of anyone who did not get a chance to go into city hall because of locked doors. She did have knowledge that, one time during voting hours of the runoff election, the back door was locked.

Barbara Clary, assistant to the commissioner, said she tried to get in the back door to vote on Tuesday, April 4 at approximately 5:30 p.m. However, the back door was locked. Clary was not asked whether she went around to the front door to gain entrance, but we know from Cooper's earlier testimony that she did.

William Camp, a 22–year–old voter, testified that he tried to vote at 6:30 on Tuesday, April 4. Because the back door was locked, he did not vote. He would have voted for candidate Cooper. Camp was not asked about what, if any, efforts he made to enter through the front door.

Frank Frankovich, a member of the planning and zoning commission, testified that he was at city hall at approximately 6:30 p.m. on Thursday, April 6 for a reason unrelated to the election, and he found the front door was manually locked. He did not know whether the back door was locked because he only went to the front door. Frankovich was not asked, and

therefore did not explain, what he did when he found the front door locked.

Zeekie McVey, another member of the planning and zoning commission, was at city hall for their meeting on Thursday, April 6. She said she went to the front door and, "at first I wasn't able to get in, because the right-hand door that you would ordinarily go in when you entered the building was locked."

### The Court's Ruling

Immediately following the testimony, the trial court ruled from the bench, as follows:

[T]he Court finds that there was a mistake on the ballot and orders a new election in the case.

The trial court also signed a written order on May 2 that provides in relevant part:

After listening to all evidence and argument of counsel, the Court finds that the outcome of the runoff election held on April 11, 2000, for Republican Party Candidate, Constable, Precinct 8, Galveston County, Texas, is not the true outcome because an election officer or other person officially involved in the administration of the election made a mistake. The Court further finds that no action by Contestee, Donald H. Olsen, Jr., caused or contributed to any mistake made in the administration of the election.

### Analysis

Did Cooper meet his burden of proof to show by clear and convincing evidence that at least 75 voters were prevented from voting for Cooper as a result of the door locking problem and ballot defect? After reviewing the evidence in the light most favorable to the judgment, we conclude Cooper's evidence was legally insufficient to show the errors "materially affected the outcome of the election."

Although Cooper testified that some people had told him they could not get in the building to vote, he did not say how

many people told him that. Only one witness, William Camp, testified that he did not vote because he found the door to the building locked. Further, only one voter, Alice Cooper, was identified as a "vote for Cooper lost" because of the absence of the Constable's race on her ballot. There is no evidence showing how many ballots were cast at the Friendswood polling place between 7:00 a.m. on Monday, April 3, and approximately 11:30 a.m. on Tuesday, April 4, when the problem with the ballot was discovered and remedied. Although Cooper testified as to his "feeling" that many voters must have been prevented from voting for him because of the complained-about irregularities, there is simply no clear and convincing evidence that at least 75 votes were so affected.

We sustain issue three. Accordingly, we need not address any other issues.

All pending motions are denied.

Having concluded that Cooper did not meet his burden in the election contest, we reverse the trial court's judgment and render judgment reinstating the outcome of the April 11 primary runoff.