NO. 07-03-0528-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



JULY 8, 2004


______________________________



WILLIE SANDERS, JR., 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 50TH DISTRICT COURT OF COTTLE COUNTY;



NO. 2783; HON. DAVID HAJEK, PRESIDING


_______________________________





Memorandum Opinion


_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 Appellant, Willie Sanders, Jr., appeals from a judgment revoking his community
supervision. Each issue asserted involves the sufficiency of the evidence underlying the
trial court's conclusion that he violated the terms and conditions of his community
supervision. We affirm the judgment.

 The State alleged in its motion to revoke that appellant violated, among others,
conditions 12, 13, 14, and 15 of his community supervision. Those conditions impose upon
him the obligation to pay (through the Cottle County Community Supervision and
Corrections Department) $140 in restitution, $310 in court costs, a fine of $2500, and $350
as reimbursement for the cost of legal counsel. Appellant was authorized to pay these
obligations through installments. However, according to the director of the Cottle County
Community Supervision and Corrections Department, who testified at the hearing, no
payments were received from appellant.

 To successfully revoke one's probation, the State must prove by a preponderance
of the evidence that appellant violated a condition of community supervision. Cobb v.
State, 851 S.W.2d 871, 874 (Tex. Crim. App. 1993). Furthermore, we view the evidence
in the light most favorable to the trial court's ruling. Jones v. State, 589 S.W.2d 419, 421
(Tex. Crim. App. 1979). And, most importantly, only one ground need be established to
warrant revocation. Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980). 

 Upon construing it in a light most favorable to the judgment, we hold that the
testimony of the director of the Cottle County Community Supervision and Corrections
Department constitutes ample evidence upon which a factfinder could reasonably conclude,
by a preponderance of the evidence, that appellant violated at least four conditions of his
probation. (1) Thus, the trial court did not abuse its discretion in granting the State's motion
to revoke.

 Accordingly, we overrule each issue and affirm the judgment of the trial court.


 Brian Quinn

 Justice


Do not publish.
1. Appellant avers in his brief that the director's testimony was hearsay. But, he does not explain how
comments by the director regarding whether he had received the required payments from appellant fall within
that category. Nor do we believe that they do so.



mended\
§ 233.006 by adding § 233.006(c). Acts 1997, 75th Leg., R.S., ch. 1349, §§ 69, 70, p.\
5096. The language of the two provisions is identical. \
'

var WPFootnote5 = ' By cross-issue, Lewis counters that if he must prove the voting intent of eligible\
voters then the trial court erred by precluding admission of such evidence. Through an\
offer of proof, Lewis preserved testimony that his witnesses intended to vote for him. We\
do not reach his cross-issue.
\
'

var WPFootnote6 = ' The mistake affected voters residing in a small area of Littlefield, the county seat.
\
'

var WPFootnote7 = ' We refer to the seven, Mary Cristan, Amanda Hodge, Geneva Logan, Albert Ayala,\
Rudy Ayala, Rusty Smith, and Robert Rivas, as the “voter-witnesses.” \
'

var WPFootnote8 = ' In addition, McCurry’s position that a contest based on the prevention of eligible\
voters from voting requires proof both of a sufficient number of voters to affect the outcome\
and their intended vote, would appear to render nugatory § 221.012(b) in such cases,\
because the court could make a calculation and ascertain the true outcome of the election. \
'

var WPFootnote9 = ' For instance, McCurry says the voters could have insisted on a “not on list” affidavit\
under Election Code section 63.007. Tex. Elec. Code Ann. § 63.007 (Vernon 2003).
\
'

function WPShow( WPid, WPtext )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'visible'" );
 else
 {
 if( floatwnd == 0 || floatwnd.closed )
 floatwnd = window.open( "", "comment", "toolbars=0,width=600,height=200,resizable=1,scrollbars=1,dependent=1" );
 floatwnd.document.open( "text/html", "replace" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( "\r\n" );
 floatwnd.document.write( "
\r\n" );
 floatwnd.document.write( WPtext );
 floatwnd.document.write( '
Close');
 floatwnd.document.write( "
" );
 floatwnd.document.close();
 floatwnd.focus();
 }
}

function WPHide( WPid )
{
 if( bInlineFloats )
 eval( "document.all." + WPid + ".style.visibility = 'hidden'" );
}







NO. 07-07-0427-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B
 
JULY 3, 2008
______________________________

JIMMY MCCURRY, APPELLANT

V.

KENT LEWIS, APPELLEE
_________________________________

FROM THE 154TH DISTRICT COURT OF LAMB COUNTY;

NO. 17,092; HONORABLE FELIX KLEIN, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
OPINION
          In this appeal of an election contest, appellant and contestee below Jimmy McCurry
asks us to set aside the trial court’s judgment voiding the November 2006 general election
for Lamb County commissioner precinct two and reinstate the original final canvas, which
showed him the winner over appellee and contestant below Kent Lewis. Finding the trial
court did not abuse its discretion in declaring the election void, we affirm its judgment.
 
Background
          Following the November 27, 2006, final canvassing of votes in the election for Lamb
County commissioner precinct two, McCurry appeared the winner by a margin of three
votes. Lewis filed an election contest on December 21 inter alia complaining that an error
in voter registration rolls prevented over a dozen persons from voting for Lewis. A bench
trial was held October 4, 2007, and at its conclusion the court found it could not declare the
true outcome of the election. It declared the election void and ordered a new election. 
McCurry requested and obtained findings of fact and conclusions of law and timely
appealed. Among its findings, the court found an election official


 prevented eligible voters
from voting and the number of eligible voters prevented from voting “was sufficient to have
or could have changed the outcome of the election.”
Issue One: Is timely notice to the Secretary of State jurisdictional?
 
          McCurry presents four issues. In his first issue, McCurry argues the trial court was
without subject matter jurisdiction of the election contest because Lewis did not deliver a
copy of his petition to the Texas Secretary of State within the time required by the Election
Code.


 We review a trial court’s order granting or denying a plea to its subject matter
jurisdiction de novo. Westbrook v. Penley, 231 S.W.3d 389, 394 (Tex. 2007). 
          It is undisputed that Lewis delivered a copy of his petition to the secretary of state
on January 11, 2007, some forty-five days after the election’s official result was
determined. McCurry filed a plea to the trial court’s jurisdiction asserting the untimely
delivery of the petition to the secretary of state deprived the court of jurisdiction. The court
denied McCurry’s jurisdictional challenge on the day of trial. In a conclusion of law, it held
that delivery of notice to the secretary of state is an administrative act and failure to strictly
comply was not jurisdictional. 
          In support of his jurisdictional argument, McCurry contends that prior to enactment
of the current Election Code in 1985 a substantial body of caselaw developed for the
proposition that notice of a contest suit was jurisdictional.


 The Austin Court of Appeals,
however, held in Honts v. Shaw, 975 S.W.2d 816, 820 (Tex.App.–Austin 1998, no pet.),
that the requirement of section 232.008(d) is not jurisdictional. We agree with the Austin
court’s holding, and the rationale expressed in its opinion. 
          McCurry argues Honts was wrongly decided. He points to caselaw holding that
when the legislature amends a statute, it is presumed to have taken notice of its prior
interpretation by the courts. See Walker v. Thetford, 418 S.W.2d 276, 292
(Tex.Civ.App.–Austin 1967, writ ref’d n.r.e.). McCurry contends the legislature thus is
presumed to have been aware of caselaw holding other requirements set forth in section
232.008 to be jurisdictional, leading to the conclusion it placed the requirement of
notification of the secretary of state within that section with the intention it also be
jurisdictional. A similar argument was rejected by the court in Nichols v. Seei, 97 S.W.3d
882, 884 (Tex.App.–Dallas 2003, no pet.), dealing with the similar notice requirement of
section 233.006(c).


 We reject it here, for the same reasons cited by the Dallas court.
          Finding the trial court did not err by overruling McCurry’s plea to the jurisdiction, we
overrule his first issue. 
Issues Two & Three: Evidence Supporting Trial Court’s Overturning Election
          We will discuss McCurry’s second and third issues together. By his second issue
McCurry challenges the legal sufficiency of the evidence supporting findings of fact two and
three, in which the court found that an election official prevented eligible voters from voting
in a number sufficient to change the election result. McCurry’s third issue contends Lewis
failed to carry his burden of proving the outcome of the election was materially affected by
irregularities of election officials.


 
          “The standard of review in an appeal from a judgment in an election contest is a
determination whether the trial court abused its discretion.” Tiller v. Martinez, 974 S.W.2d
769, 772 (Tex.App.–San Antonio 1998, pet. dism’d w.o.j.). A trial court abuses its
discretion when it acts “without reference to any guiding rules and principles.” Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Thus we may not
reverse the judgment of the trial court, if the trial court acted within its discretion, simply
because we might have reached a different result. Id. at 242. 
            Under the abuse of discretion standard, the sufficiency of evidence supporting the
trial court’s findings is a factor we consider in determining whether the court abused its
discretion. Willet v. Cole, 249 S.W.3d 585, 591 n.4 (Tex.App.–Waco 2008, no pet.); In re
J.R.C., 236 S.W.3d 870, 875 (Tex.App.–Texarkana 2007, no pet.). In a non-jury case,
when the appellate record includes both findings of fact and conclusions of law and a
reporter’s record, we review the sufficiency of the evidence under the same standards
applied in cases tried by jury. Slusher v. Streater, 896 S.W.2d 239, 241 (Tex.App.–Houston
[1st Dist.] 1995, no writ). In reviewing the legal sufficiency of the evidence under a clear
and convincing standard, we look at all the evidence, in the light most favorable to the
judgment, to determine if the trier of fact could reasonably have formed a firm belief or
conviction that its finding was true. In re J.F.C., 96 S.W.3d 256, 265-66 (Tex. 2002). We
disregard any contrary evidence if a reasonable trier of fact could do so, but we do not
disregard undisputed facts. In re J.L., 163 S.W.3d 79, 85 (Tex. 2005). 
          To set aside the outcome of an election, the contestant must prove by clear and
convincing evidence that a violation of the Election Code occurred, and it materially affected
the outcome of the election. See Willet, 249 S.W.3d at 589; Olsen v. Cooper, 24 S.W.3d
608, 610 (Tex. App.–Houston [1st Dist.] 2000, no pet.); Honts, 975 S.W.2d at 822; Slusher,
896 S.W.2d at 241; Tex. Elec. Code Ann. § 221.003 (Vernon 2003).
          A court trying an election contest shall attempt to ascertain whether the outcome
shown by the final canvass was not the true outcome because illegal votes were counted
or an election official prevented eligible voters from voting, failed to count legal votes, or
engaged in other fraud, illegal conduct, or mistake. Tex. Elec. Code Ann. § 221.003
(Vernon 2003). 
          The outcome of an election is “materially affected” when a different and correct result
would have been reached in the absence of irregularities, see Price v. Lewis, 45 S.W.3d
215, 218 (Tex.App.–Houston [1st Dist.] 2001, no pet.), or irregularities in the conduct of the
election render it impossible to determine the majority of the voters’ true will. Guerra v.
Garza, 865 S.W.2d 573, 576 (Tex.App.–Corpus Christi 1993, writ dism’d w.o.j.); Frias v.
Board of Trustees, 584 S.W.2d 944, 948 (Tex.Civ.App.–El Paso 1979, writ ref’d n.r.e.), cert.
denied, 444 U.S. 996, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979); Tex. Elec. Code Ann. §
221.012(b) (Vernon 2003).
          The facts leading to the contest are largely undisputed. Because officials used a
map containing errors when precincts were redistricted after the 2000 census, some Lamb
County registered voters were assigned, by mistake, to election precinct two, when they
actually resided in election precinct six.


 Election precinct six is within Lamb County
commissioners’ precinct two, election precinct two is not. At the 2006 general election, the
voting box for election precinct two was located at the Littlefield junior high school, and the
box for election precinct six was located at the Texas Department of Transportation building. 
Because commissioner precinct two did not include the area within election precinct two,
the election for commissioner precinct two did not appear on the ballot given voters at the
junior high school. Lamb County voter registrar Linda Charlton learned of the errors in the
residents’ election precinct assignment within thirty days of the election but testified this was
an insufficient period for remedial measures. She believed affected voters could vote
provisionally but decided to leave the matter to the election judges. 
          Rusty Smith testified he presented for voting at the TxDOT building but was told to
call the courthouse because his name did not appear on the voting list although he was a
registered voter. An unidentified person at the courthouse directed Smith to the junior high
school where he voted a ballot that did not include the precinct two commissioner’s election. 
          Rudy Ayala had voted in election precinct two at the junior high school for about forty
years. While voting in the 2006 general election, he noticed his ballot did not include the
precinct two commissioner’s election. Ayala pointed out the omission to an election judge
who told him, “‘If his name is not on there, you don’t vote.’” 
          Albert Ayala is the son of Rudy Ayala. Albert chose to vote electronically and like his
father pointed out to an election judge that the precinct two commissioner’s race was absent
from the ballot. Like his father, Albert was told he could not vote in that race if the candidate
did not appear on the ballot. Albert testified the election judge made a telephone call, but
he was not offered a provisional ballot or other possible solution. 
          Mary Cristan attempted to vote at the Littlefield city hall but was directed to the junior
high school where she voted a straight party ticket on a paper ballot. After the election, she
learned from Lewis that the precinct two commissioner’s race did not appear on the ballot
at the junior high school. 
          Geneva Logan lived at the same Littlefield address for over forty years and always
voted at the junior high school. For the 2006 general election, her name was on the voter
list at the junior high school and she voted a straight ticket on a paper ballot. After voting,
she learned the precinct two commissioner’s race did not appear on the ballot. 
          Amanda Hodge participated in early voting at the city hall and noticed the precinct
two commissioner’s race did not appear on the ballot she received. When she inquired of
an election official about the absence, Hodge was told the ballot was correct according to
the information on Hodge’s voter registration card.
          On election day, Robert Rivas went to the Lamb County courthouse and asked
where he should vote. An unidentified person, checking voter registration cards, directed
him to the junior high school. Rivas’ name appeared on the voting list at the junior high
school but the precinct two commissioner’s election did not appear on his ballot.
          Molly Rivas is the wife of Robert Rivas. Her voter registration card specified she vote
at the junior high school but she learned from her husband that the precinct two
commissioner’s race did not appear on the ballot at the school. Shortly before the polls
closed, Molly went to the polling place at the TxDOT building. An election official told her
the commissioner’s race appeared on the ballot at that location but the voting list did not
include her name. An election official at that location called Charlton about Molly’s situation
and was told to allow Molly’s vote. 
          Were eligible voters prevented from voting by an election official?
          The trial court found seven of Lewis’ trial witnesses were eligible voters but were
prevented from voting in the precinct two commissioner’s race.


 McCurry contends the
evidence conclusively establishes each of the voter-witnesses voted, and that no election
official, therefore, could have prevented them from voting. But the question is not whether
they voted in other races in the 2006 general election; rather, the inquiry is whether election
officials prevented eligible voters from voting in the election for commissioner, precinct two. 
No evidence countered the testimony of the seven voter-witnesses that they did not vote
in the election for commissioner, precinct two because the race did not appear on the ballot. 
          McCurry next argues there was no evidence that an election official prevented an
eligible voter from voting. According to trial testimony, Smith, Cristan, and Robert Rivas
were directed by an election official to a polling place where they received a ballot that did
not contain the precinct two commissioner’s race. Rudy Ayala and Albert Ayala questioned
the absence of the commissioner’s race from their ballots and were told by an election
official that they could not vote for a candidate whose name did not appear on the ballot. 
An election official at city hall told Hodges that the ballot she received, which did not contain 
the precinct two commissioner’s race, was correct according to the information on her voter
registration card. Election registrar Charlton was aware of an error in the voter registration
cards but left handling the matter to the election judges. 
          Viewing all the evidence in the light most favorable to the court’s finding, we find the
court as fact finder could have formed a firm belief or conviction that election officials
prevented eligible voters from voting in the precinct two commissioner’s race. The trial court
did not act on legally insufficient evidence. See J.F.C., 96 S.W.3d at 266.
 
 
          Did the prevention of voting by eligible voters materially affect the election outcome?
          McCurry’s third issue rests on the premise that, to show the prevention of voting by
eligible voters materially affected the election’s outcome, Lewis was required to prove that
a sufficient number of the voters prevented from voting would have voted for him to have
changed the election’s outcome. 
          In support of his contention, McCurry refers us to Price, 45 S.W.3d 215. There Price
won an election over Lewis for the district one seat on the Galveston city council by a 69-vote margin. Lewis contested the election, and evidence showed that ballots for the district
one and district two races should have been available at one polling place but only district
two race ballots were distributed to the polling place on election day. The trial court found
that 28 voters who lived in district one were improperly permitted to vote in the district two
race, and that an unknown number of other voters left the polls without voting. The trial
court concluded it could not ascertain the true winner of the election, declared it void, and
ordered a new election. Price appealed. The appellate court framed the burden of proof
for Lewis: “Did Lewis meet her burden of proof to show by clear and convincing evidence
that at least 69 voters were prevented from voting for her as a result of the ballot defect?” 
Id. at 221. In finding Lewis did not discharge this burden, the court noted that even if the
28 miscast votes had been cast for Lewis there was not sufficient proof that at least 41
other voters were turned away without voting and their votes would have gone to Lewis. Id. 
          The evidence in Olsen, 24 S.W.3d 608 also cited by McCurry, was like that in Price. 
The contestant Cooper lost the race by 75 votes. Although evidence showed that some
number of votes were affected by a ballot error and a locked door to the voting place, the
appellate court found no clear and convincing evidence that 75 voters were prevented from
voting. Id. at 613. 
          In neither Olsen nor Price did the evidence clearly and convincingly show that the
gross number of voters denied the vote by an election official, without regard to which
candidate a voter favored, was sufficient to have changed the outcome of the election.
Price, 45 S.W.3d at 221; Olsen, 24 S.W.3d at 613. Thus, neither case is dispositive of the
issue before us. 
          Moreover, for two reasons, we do not read Price for the proposition that when voting
by eligible voters is prevented by an election official the contestant must prove both the
number of those prevented from voting and their intended vote. First, such a reading
conflicts with Texas Supreme Court caselaw. See Duncan v. Willis, 157 Tex. 316, 326-27
& 327 n.2, 302 S.W.2d 627, 634-35 & 635 n.2 (1957) (election code does not authorize
voter to testify, after the election, how he or she intended to vote). Second, such a reading
runs contrary to an express provision of the Election Code. Under section 221.009(b), an
election contested because of illegal votes may be declared void if the number of illegal
votes was sufficient to have changed the election’s outcome, without a determination of how
individual voters voted. Tex. Elec. Code Ann. § 221.009(b) (Vernon 2003); see Gonzales
v. Villarreal, 251 S.W.3d 763, ___ (Tex.App.–Corpus Christi 2008, pet. dism’d w.o.j.);
Alvarez, 844 S.W.2d at 242 (both noting § 221.009); cf. Tex. Elec. Code Ann. 221.012(b)
(court shall declare election void if it cannot ascertain true outcome).


 
          Despite his reliance on Price, McCurry also argues Lewis could not properly show
at trial the intended vote of the voter-witnesses and without this evidence he could not meet
his burden of proof. We agree with McCurry that sound policy prohibits a voter from
testifying in an election contest how the voter intended to vote. See Duncan, 157 Tex. at
327-28, 302 S.W.2d at 635 (quoting Davis v. State ex rel. Wren, 75 Tex. 420, 428, 12 S.W.
957, 960 (1889)). But we do not agree such evidence was essential to the finding that
prevention of voting by eligible voters materially affected the election’s outcome. Texas law
has long provided otherwise. “If the right of a voter to vote has been denied to any person
duly qualified, it may be shown in case of a contest. And if the number of voters whose right
has been so denied is large enough to materially affect the result it will vitiate the election.” 
McCormick v. Jester, 115 S.W. 278, 285 (Tex.Civ.App. 1909, writ dism’d) (citing McCreary
on Elecs., § 527 (4th ed.)). An election’s outcome may be materially affected if irregularities
in the conduct of the election render impossible a determination of the majority of the voters’
true will. Guerra, 865 S.W.2d at 576. By the final canvas of votes in the contested race,
McCurry prevailed by three votes. In a finding supported by clear and convincing evidence,
the trial court found election officials prevented the seven voter-witnesses from voting in the
race. Having made such a finding, it was the task of the trial court to ascertain and declare
the true outcome of the election and, if unable to so, to declare the election void. See Tiller,
974 S.W.2d 769, 772; Tex. Elec. Code Ann. §§ 221.003(a)(2)(A) & 221.012(a),(b) (Vernon
2003). Unable to declare the true outcome of the election, the trial court did not abuse its
discretion by declaring it void. See Tex. Elec. Code Ann. § 221.012 (b). McCurry’s second
and third issues are overruled. 
Issue Four: Were voters required to mitigate the effect of preventive acts 
by election officials?
 
          In his final issue, McCurry challenges the evidentiary strength supporting the court’s
finding of fact number fourteen wherein it found the voter-witnesses “‘were prevented from
voting in the election for County Commissioner, Precinct No. 2, Lamb County, Texas, by an
election official or other persons officially involved in the administration of the election.’”
According to McCurry, the finding is not established by clear and convincing evidence for
the singular reason that none of the voter-witnesses “attempted to properly cast a ballot in
this race.” His argument points to actions he asserts the voters could, and should, have
taken to vote in the race despite their mistaken election precinct assignments.


 We do not
agree that the voters’ failure to take such actions precluded the trial court from finding they
were prevented by election officials from voting in the county commissioner’s race. We
overrule McCurry’s final issue.
 
 
          Having overruled each of McCurry’s issues, we affirm the judgment of the trial court.
 
                                                                           James T. Campbell

                                                                                    Justice