

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00113-CV

———————————————

STEVEN DENNY, Appellant

V.

THE HONORABLE LAWRENCE M. 'LARRY' DOSS, JUSTICE, 7TH COURT OF
APPEALS, PLACE 4, Appellee

On Appeal from the 251st District Court
Potter County, Texas
Trial Court No. 109,616-C-CV

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

This is an accelerated appeal involving a primary-election contest. *See* Tex. Elec. Code Ann. § 232.014. Two competing candidates for Place 4 on the Seventh District Court of Appeals, whose principal courthouse is in Amarillo and which has jurisdiction over a 46-county area, were on the ballot for the March 3, 2020 Republican primary. But an unknown election official with the Texas Secretary of State's office mistakenly left this race off the primary ballots provided to the Republican county chairs of Cochran and Collingsworth Counties.

Out of the 91,649 Republican primary ballots collectively cast in this race in the 44 counties that received ballots containing it, Appellant Steven Denny prevailed over incumbent Lawrence "Larry" Doss by a 297-vote margin. In Cochran and Collingsworth Counties, 1,214 Republican primary voters cast ballots, but because of the election official's mistake could not vote in the Denny–Doss primary contest. The precise number of voters left without a voice in this race (1,214) unquestionably exceeds the margin (297) of total votes that were cast for Denny.

When the two-county ballot snafu came to light after March 3, Appellee Doss successfully challenged the election results, with the trial court holding that the election official's mistake prevented eligible voters in those counties from voting, which in turn—because of the numbers involved—meant that the election's "true outcome" could not be ascertained. Denny now appeals the trial court's judgment voiding the primary election and ordering that a new election be held

contemporaneously with the upcoming statewide Republican General Primary Runoff Election, currently scheduled for July 14, 2020, by order of the Governor of the State of Texas.[1]

We will affirm.

## Procedural History

Doss timely filed his election contest on March 12, 2020, in Potter County. *See id.* §§ 221.002(a), 232.006(b), .008(c). The Presiding Judge of the Ninth Administrative Judicial Region assigned the judge of the 358th District Court of Ector County to the 251st District Court of Potter County to preside over this matter.[2]

On March 26, 2020, the parties filed stipulated facts. On March 30, the assigned judge conducted a telephonic hearing by agreement. On April 1, the trial court signed its final judgment and made written findings of fact and conclusions of law, voiding the March 3 primary election and ruling that Denny and Doss must have a do-over in the entire 46-county area served by the Seventh Court of Appeals.

As soon as Denny perfected his appeal, the trial court set expedited appellate deadlines by which the record would be filed no later than April 10 and briefing

---

[1]Primary runoff elections ordinarily occur in May of a given election year. Tex. Elec. Code Ann. § 41.007(b). Because of the COVID-19 pandemic of 2020, Governor Greg Abbott rescheduled that election. *See* The Governor of the State of Tex., Proclamation 41-3724, 45 Tex. Reg. 2273, 2273–74 (2020).

[2]A judge outside the affected district must be assigned to preside over an election contest. *See* Tex. Elec. Code Ann. § 231.004. Ector County is within the Eleventh District Court of Appeals' jurisdiction. Tex. Gov't Code Ann. § 22.201(l).

completed no later than April 20, which has been done. *See id.* §§ 221.002(f), 232.014(b), (d).

In the meantime, all justices on the Seventh Court of Appeals recused themselves; by order dated April 8, the Supreme Court of Texas directed the Seventh Court to transfer this case to us, which it did on April 9. At the end of the briefing period, we notified the parties that this case would be submitted on April 23, 2020. *See* Tex. R. App. P. 38.6(d) (authorizing court, in the interest of justice, to shorten time for filing briefs and for submission of case).

As the transferee court, we "must decide the case in accordance with the precedent of the transferor court." *See* Tex. R. App. P. 41.3. We have observed that this rule's "purpose . . . is to require the transferee court to 'stand in the shoes' of the transferor court so that an appellate transfer will not produce a different outcome, based on application of substantive law, than would have resulted had the case not been transferred." *In re Reardon*, 514 S.W.3d 919, 922–23 (Tex. App.—Fort Worth 2017, orig. proceeding) (quoting Tex. R. App. P. 41.3 cmt.).

## Issues on Appeal

Denny's issues can be characterized and reordered as

- Whether the trial court erred in voiding the primary election when the election's true outcome can be ascertained from the votes that were cast on March 3.

- Whether a contestant must prove not simply that the number of eligible voters who were deprived of casting a ballot in a particular contested race exceeded

4

the margin of victory among votes actually cast, but that the election's results would have been different.

- Whether a candidate—or voters themselves—can waive a complaint about a faulty ballot by failing to inspect the ballot for accuracy and timely bringing the mistake to an election official's attention.

## Stipulated Facts

We reproduce verbatim the parties' stipulated facts on which the trial court heard and disposed of this case.

1. Justice Lawrence "Larry" Doss and Steven Denny properly filed applications to be placed on the ballot as Republican Party candidates for the Seventh District Court of Appeals, Place 4 (Unexpired Term) for the March 3, 2020 Republican General Primary Election. *See* Affidavit of Brandon Moore.[3]

2. Both Justice Doss and Mr. Denny were certified to the Texas Secretary of State by the Republican Party of Texas on December 18, 2019. *Id.*

3. The Seventh District Court of Appeals encompasses 46 Counties in the Texas Panhandle, including Cochran County and Collingsworth County. Tex. Govt. Code Sec. 22.201(h).

4. The Texas Secretary of State's Texas Election Administration and Management (TEAM) System generates a candidate list for county chairs to use in conducting their ballot draw with the statewide and district offices for their county based on the list provided by the political parties. *See* Affidavit of Brandon Moore.

5. Due to a mistake of a person officially involved in the election, the identity of whom is unknown, the office of Justice, Seventh Court of Appeals District, Place 4, Unexpired Term, and the names of Steven Denny and Lawrence "Larry" Doss, did not appear on the list of statewide and district candidates provided to the Cochran

---

[3]All the referenced attachments are in the appellate record.

5

and Collingsworth Republican county chairs by the Texas Secretary of State for use in their ballot draw or on the ballot certification which was also generated by the Texas Secretary of State. *Id.*; Affidavit of John Schmidt, Exhibits 1 and 2.

6. Hockley County did not originally include the race for Republican Nominee, Seventh District Court of Appeals, Place 4 but the Hockley County Republican Party Chair and Justice Doss notified the Republican Party of the error in Hockley County and it was corrected prior to any votes being cast. *See* Attachments to Affidavit of Brandon Moore.

7. The race for Republican Nominee, Seventh District Court of Appeals Place 4 (Unexpired Term) did not appear on the specimen ballot, sample ballot, Early Vote By Mail ballot, early ballot or regular ballot provided to voters in Cochran County. *See* Affidavit of Cheryl J. Butler attached to Contestant's Petition; Affidavit of Cheryl Butler; Affidavit of John Schmidt, Exhibit 4.

8. The race for Republican Nominee, Seventh District Court of Appeals Place 4 (Unexpired Term) did not appear on the specimen ballot, sample ballot, Early Vote By Mail ballot, early ballot or regular ballot provided to voters in Collingsworth County. *See* Affidavit of Jackie Johnson attached to Contestant's Petition; Affidavit of Jackie Johnson attached to Contestee's Answer.

9. The ballots that omitted the race for 7th Court of Appeals Place 4 were on display and available for inspection in Cochran County and Collingsworth County. *See* Affidavit of Jackie Johnson attached to Contestee's Answer; Affidavit of Cheryl Butler.

10. Collingsworth County has 1,904 registered voters who were qualified to vote on March 3, 2020. 756 votes were cast in the March 3, 2020 Republican Primary in Collingsworth County. *See* Affidavit of Jackie Johnson attached to Contestant's Petition.

11. Cochran County has 1,757 registered voters who were qualified to vote on March 3, 2020. 458 votes were cast in the March 3, 2020 Republican Primary in Cochran County. *See* Affidavit of Cheryl J. Butler attached to Contestant's Petition.

12. In the remaining 44 Counties, 91,649 people voted for a candidate

6

in the race for Republican Nominee, Seventh District Court of Appeals Place 4. Steven Denny received 45,973 votes. Justice Doss received 45,676 votes. Steven Denny won the votes cast by 297 votes. *See* Official Result, Texas Secretary of State.

13. A total of 1,214 voters did not have the office of Seventh District Court of Appeals, Place 4 on their ballot when they should have. *See* Sum of Stipulated Facts 10 and 11, *supra*.

14. No one reported the error in the Cochran County ballot or Collingsworth County ballot until after the polls had closed. *See* Affidavit of Jackie Johnson attached to Contestee's Answer; Affidavit of Cheryl Butler.

15. The local canvasses from the March 3, 2020 Republican General Primary Election showed 0 votes cast for either candidate in the Seventh Court of Appeals District, Place 4 race because it did not appear on any ballot available to voters in Cochran or Collingsworth Counties. *See* Affidavit of John Schmidt, Exhibit 5.

**The Trial Court's Findings of Fact and Conclusions of Law**

The trial court adopted and incorporated by reference the stipulated facts, which the trial court noted "and the parties concede[d]" are "undisputed." As a result, no need existed for the trial court "to engage in a credibility, relevance, and admissibility analysis" of the evidence.

The trial court enumerated its legal conclusions in a 28-paragraph section headed "Conclusions of Law and Disposition."[4] The trial court cited applicable

---

[4]The 28th numbered paragraph consists of an observation:

**NOTE:** This action presents unique and unfortunate circumstances. As such, the court is mindful that the resolution of this dispute may be perceived as harsh or unreasonable. Although the remedies available to the court in disposing of the parties' dispute are limited and defined, the

7

Election Code provisions and applied them to the stipulated facts under the guidance of *McCurry v. Lewis*, 259 S.W.3d 369 (Tex. App.—Amarillo 2008, no pet.), Seventh Court authority that the trial court called "binding, controlling, and dispositive." Because the stipulated evidence clearly and convincingly proved that election officials' mistakes kept 1,214 voters in Cochran and Collingsworth Counties from choosing between Denny and Doss, and because Denny's margin of victory was only 297 votes, the trial court concluded that it could not "ascertain the true outcome of the election," as the Election Code calls for the tribunal to attempt to do. Tex. Elec. Code Ann. § 221.012(a).

Thus, in accordance with nondiscretionary statutory directives if an election's true outcome cannot be ascertained, the trial court voided the primary election for Place 4 and ordered that a new election between Denny and Doss throughout all 46 counties[5] be conducted concurrently with the July 14, 2020 Republican General

clear and convincing stipulated evidence accepted by the court, the applicable statutory authority, and the controlling and binding precedent supports, and only permits, the very result the court has pronounced. Our legislature should be encouraged to expand the remedies, legal and equitable, that a presiding court may consider in addressing and adjudicating election disputes filed by candidates who advance the same or similar scenario and dilemma.

[5]At the hearing, both parties agreed that the Election Code did not provide for what the trial court saw as the "simple solution" of ordering a "special election for the two counties that did not cast votes in this primary election."

Primary Runoff Election, or at any other time the Governor might set for that runoff. *See id.* §§ 221.012(b), 232.041.

The trial court also concluded that Doss had to prove only that election irregularities caused by election officials' mistakes "materially affected" the outcome, not that the outcome would have been different. Additionally, the trial court concluded that Doss did not waive his right to contest the election by not examining the counties' ballots ahead of time because a candidate's failure to verify ballot accuracy cannot "waive the rights and entitlement of eligible voters[] to participate and vote in the electoral process," and no caselaw or statute requires a candidate to ensure that a ballot is accurate on pain of waiving an election contest.

**Standard of Review**

We review a trial court's ruling on an election contest for an abuse of discretion. *McCurry*, 259 S.W.3d at 372; *Tiller v. Martinez*, 974 S.W.2d 769, 772 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.). The well-known test for abuse of discretion is whether the court acted without reference to any guiding rules or legal principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). If a trial court incorrectly construes the law or misapplies the law to undisputed facts, it has abused its discretion. *W.B.M. Mgmt. Co. v. Flores*, No. 07-14-00008-CV, 2014 WL 1691362, at *1 (Tex. App.—Amarillo Apr. 25, 2014, no pet.) (mem. op.).

## Analysis

The Election Code provides the framework for deciding this matter: a tribunal dealing with an election contest must try to ascertain whether the election's outcome is not the true outcome because (among other statutory reasons) an election official "prevented eligible voters from voting"; if the true outcome is not ascertainable, the tribunal must "declare the election void"; and if the election is declared void, the court must "order a new election." Tex. Elec. Code Ann. §§ 221.003(a)(2)(A), .012(b), 232.041. In connection with the ascertain-the-true-outcome provision, to overturn an election the contestant must prove by clear and convincing evidence that voting irregularities materially affected the election results. *McCurry*, 259 S.W.3d at 372–73.[6]

## I. Could the election's true outcome be ascertained under these facts?

If the answer to this pivotal question is "no," as the trial court held, the Election Code dictates the remedy. We agree with the trial court.

Denny contends that the primary election's true outcome can indeed be ascertained from the votes that were cast on March 3—over 90,000 voters cast a vote, Denny prevailed, and the Republican Party certified Denny as the winner to the Secretary of State. To the extent Denny implies that the election's "official results" posted to the Secretary of State's website as of March 24, 2020, preclude any challenge to those results, he offers—and we have found—no authority for that proposition.

---

[6]As we pointed out earlier, as a transferee court we follow authority from the Seventh Court of Appeals. *See* Tex. R. App. P. 41.3.

Moreover, when Doss timely filed his contest on March 12, the statewide canvass for Republican primary elections had not even yet occurred, as Doss's petition made clear.[7] Thus, we do not see anything legally significant about Denny's having been certified as the primary winner while Doss's election contest was pending.

Denny also attempts to distinguish a primary election from a general election in such a way as to suggest, again without any authority, that the trial court erred by voiding the election and ordering a new one. Denny notes that a primary is "a function of a political party . . . to choose a nominee for the general election"; that mechanisms exist for the party to "usurp the will of the voters after a primary election" by (for example) giving the party executive committee authority to substitute a candidate if the first one dies or becomes ineligible after the withdrawal period, *see* Tex. Elec. Code Ann. §§ 172.058(b), .060(b); and that counties lacking party leadership need not even participate in a primary election except "[o]n request of the state chair of a political party," *id.* § 172.128(b). But Denny does not connect these statutory provisions to the idea that the trial court erred in holding that it could not ascertain the true outcome of the election when 1,214 voters were deprived of their

---

[7]Doss pleaded that "[t]he official result of the 2020 Republican General Primary Election is determined by statewide canvass, which will be held not later than Sunday, March 15, 2020. Tex. Elec. Code § 172.120(b). The deadline for submission of a petition in an election contest from that date is March 25, 2020. Tex. Elec. Code § 232.008(c)."

right to vote in this race and when the margin of Denny's victory was significantly below that number. We cannot fathom any connection that changes the result.

Finally, although we do not disagree that runoff elections historically see a huge drop-off in voter turnout and that the COVID-19 pandemic's after-effects might depress that turnout even further, we cannot conclude that these possibilities provide any legal basis to hold that the trial court misapplied the law or otherwise abused its discretion. Contrary to Denny's position, holding a new election will not "disenfranchise" the 91,649 who voted in the primary; any qualified voter in the entire 46-county area is free to vote again, or for the first time, or not at all, on July 14, 2020.

More to the point, the trial court's job was to decide whether the election's true outcome could be ascertained from the stipulated facts. The principles by which the trial court was to perform its job can be found in *McCurry*, which involved a virtually identical situation. There, because officials had used an erroneous map when redistricting precincts in Lamb County, some voters were mistakenly assigned to the wrong precinct. *McCurry*, 259 S.W.3d at 373. After Lewis lost a county commissioner's race by three votes, he filed an election contest and proved that more than that number of eligible voters (seven) had been prevented from voting due to his race's not being on those voters' wrong-precinct ballots. *Id.* at 370, 376. Affirming the trial court's voiding the election and ordering a new one, the Seventh Court of Appeals stated,

To set aside the outcome of an election, the contestant must prove by clear and convincing evidence that a violation of the Election Code occurred, and it materially affected the outcome of the election.

A court trying an election contest shall attempt to ascertain whether the outcome shown by the final canvass was not the true outcome because illegal votes were counted or an election official prevented eligible voters from voting, failed to count legal votes, or engaged in other fraud, illegal conduct, or mistake.

The outcome of an election is "materially affected" when a different and correct result would have been reached in the absence of irregularities or irregularities in the conduct of the election render it impossible to determine the majority of the voters' true will.

*Id.* at 372–73 (citations omitted).

Just as in *McCurry*, a case we are bound to follow, ascertaining the true outcome of the Place 4 primary race is impossible here, based entirely on the math. The trial court reached the only logical conclusion.

## II. Did the contestant have to prove that he would have won?

Denny relies on a case from the First Court of Appeals to argue that it was not enough for Doss to show how many voters were disenfranchised in the primary—he had to also prove what the outcome would have been. *Price v. Lewis*, 45 S.W.3d 215 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (op. on reh'g). The *Price* court wrote that it was the contestant's burden to show that, "but for the ballot error, a 'different and correct result' would have been reached; i.e., that she would have won the election." *Id.* at 220–21.

13

Regardless of whether it might prevail in the First Court, Denny's argument cannot succeed in the Seventh Court (and thus not with us, sitting in its place). *McCurry* made clear that an election's outcome is "materially affected" when "a different and correct result would have been reached in the absence of irregularities [citing *Price*], *or* irregularities in the conduct of the election render it impossible to determine the majority of the voters' true will." *McCurry*, 259 S.W.3d at 373 (emphasis added). Indeed, the *McCurry* court expressly rebuffed the notion that the law requires a contestant to prove that he would have won, for two reasons. First, *Price* (and *Olsen v. Cooper*, 24 S.W.3d 608 (Tex. App.—Houston [1st Dist.] 2000, no pet.), another case with similar facts) did not involve evidence clearly and convincingly showing that "the gross number of voters denied the vote by an election official, *without regard to which candidate a voter favored*, was sufficient to have changed the outcome of the election." *McCurry*, 259 S.W.3d at 375 (emphasis in original). Second, proving the winner would require testimony from voters about how they would have voted—something that flies in the face of public policy and Texas Supreme Court authority. *Id.* (citing *Duncan v. Willis*, 302 S.W.2d 627, 634–35, 635 n.2 (Tex. 1957) (explaining that the election code does not authorize a voter to testify, after the election, how he or she intended to vote)).

Going back even further, the *McCurry* court settled the point by quoting a case that is more than a century old: "If the right of a voter to vote has been denied to any person duly qualified, it may be shown in case of a contest. And if the number of

14

voters whose right has been so denied is large enough to materially affect the result it will vitiate the election." *Id.* at 376 (quoting *McCormick v. Jester*, 115 S.W. 278, 285 (Tex. App.—Dallas 1908, writ dism'd)).

We thus agree with the trial court that a contestant need not prove both the number of people who were prevented from voting *and* their intended vote; such a requirement, as the trial court rightly concluded, would "impose an improper burden on the Contestant because the law, and sound policy, prohibits any voter from testifying in an election contest as to how he or she intended to vote."

## III.  Do waiver principles apply in a case such as this?

Finally, we address Denny's waiver issues, which challenge the trial court's conclusions that a candidate "cannot, through action or inaction, waive the rights and entitlement of eligible voters[] to participate and vote in the electoral process" and that no law or statute requires a candidate to verify the accuracy of an election ballot.

On the latter issue, Denny points out—as the parties' stipulated fact number 6 recites—that Doss and the Hockley County party chair both noticed that the Place 4 race had been omitted from the Hockley County[8] ballot and brought that to the state GOP's attention; the ballot was corrected before any voting had started. Denny draws from this an affirmative obligation for Doss and the party to have then checked

---

[8]Hockley County is one of the Seventh Court's 46 counties. *See* Tex. Gov't Code Ann. § 22.201(h).

other counties' ballots for correctness, and he argues that because no one did, "the candidates waived any complaint that they suffered by omission from these ballots."

But the Election Code imposes no duty on a candidate to inspect ballots for accuracy, and Denny has offered no caselaw or other authority imposing a duty to do so. Moreover, the cases he cites for the proposition that "final responsibility for the accuracy of an election lies with the candidate" involve a candidate's responsibility for following the application process for getting on the ballot in the first place. *See, e.g., Escobar v. Sutherland*, 917 S.W.2d 399, 405 (Tex. App.—El Paso 1996, orig. proceeding); *Bejarano v. Hunter*, 899 S.W.2d 346, 350 (Tex. App.—El Paso 1995, orig. proceeding). The two situations are markedly different.

Even beyond Doss's own interest, once both he and Denny were properly certified as candidates for Place 4, the voters in all 46 counties were then entitled to choose between them. Doss's failure to check the Cochran and Collingsworth County ballots, which he was not obliged to do, cannot have waived those voters' right to cast a ballot for the candidate of their choice, a right that has been called the "essence of a democratic society." *Reynolds v. Sims*, 377 U.S. 533, 555, 84 S. Ct. 1362, 1378 (1964).

Finally, Denny argues that even though only a candidate can mount an election contest, voters themselves—because they can view and inspect sample ballots ahead of an election—are not blameless: although the disenfranchised voters lacked standing to challenge the result, "even if they did, they waived any right to complain by failing to do so during the inspection period authorized by statute." As with Doss, the law

16

imposes no such duty on voters; rather, the duty lies entirely with the appropriate election authority to "have placed on the ballot the name of each candidate . . . whose entitlement to placement on the ballot has been lawfully certified to the authority." Tex. Elec. Code Ann. § 52.003(a)(2). If that is not done, and if the true result of an election cannot be ascertained, the Election Code provides the one and only remedy. We agree with the trial court that a waiver defense has no place here.

## Conclusion

The number of disenfranchised voters exceeded the margin of the difference between the votes cast in the primary for Denny and Doss. Because as a result the trial court could not ascertain the election's true outcome, the statutory remedy is to void the election and order a new one. We affirm the trial court's judgment and will not entertain a motion for rehearing. *See id.* § 232.014(e).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: April 30, 2020

17