**Booker PRICE, Appellant,**

v.

**Sharon LEWIS, Appellee.**

**No. 01–00–00898–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

March 1, 2001.

---

4. Given our disposition of this issue, it is unnecessary to address the remaining twelve issues.

Robert V. Shattuck, Jr., Galveston, Dwight Jefferson, Houston, Robert E. Hoskins, Galveston, for Appellant.

Anthony P. Griffin, Galveston, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON, and DUGGAN.*

## OPINION ON MOTION FOR REHEARING

SCHNEIDER, Chief Justice.

On this date, the Court considered appellee's motion for rehearing. The motion for rehearing is **DENIED.**[1] However, we withdraw our opinion of January 11, 2001, and issue this opinion in its stead.

In this accelerated appeal of an election contest suit, appellant, Booker Price, challenges the trial court's ruling setting aside

the outcome of the May 6, 2000 election for Galveston City Council, district one. We reverse.

## Case Background

The parties competed for the position of Galveston City Council Member for district one. Both ran to fill a vacant position on the council. After the election results were certified, Price was declared the winner with a 69–vote margin.

On June 2, 2000, appellee, Sharon Lewis, filed suit seeking to set aside the outcome of the election, alleging it was not the true outcome of the election in light of "irregularities and illegalities that took place in context of the election in question." Specifically, Lewis asserts that mistakes at the polling place for precinct 313 caused an improper election result because (1) both she and Price were left off the ballot for district one voters, and, as a result (2) several district one voters were given, and voted, district two ballots, or left without voting at all.

Following a bench trial held July 13, 2000, the trial court set aside the election and ordered a new election. Price appeals seeking to reverse the trial court's judgment and confirm the outcome of the May 6 election. In two points of error, Price contends (1) that Lewis's contest was untimely filed, and (2) that the trial court

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. In her motion for rehearing, appellee contends that this court applied the incorrect standard of review. Specifically, appellee states that we used the standard of review applicable when no findings of fact are filed by the trial court, even though the trial court, in this case, actually filed findings of fact. We have reviewed the clerk's record in this case, and it does not contain findings of fact as required by TEX.R.APP. 34.5(a)(4). It ap-

pears that the findings of fact were signed by the trial court after appellant's brief was filed, but before appellee's brief was filed. No party ever supplemented the record with the trial court's findings, but they are attached as an exhibit to appellee's brief. Because no party contests the authenticity of these findings, we will revise our original opinion to reflect our consideration of the trial court's findings. Our final disposition, however, remains the same.

abused its discretion in setting aside the election and ordering a new election.

## Burden of Proof and Standard of Review

To set aside the outcome of the election, Lewis bore the burden of proving (1) that violations of the Election Code occurred, and (2) that they materially affected the outcome of the election. *Olsen v. Cooper*, 24 S.W.3d 608, 610 (Tex.App.—Houston [1st Dist.] 2000, no pet); *Honts v. Shaw*, 975 S.W.2d 816, 822 (Tex.App.—Austin 1998, no pet.); *Slusher v. Streater*, 896 S.W.2d 239, 241 (Tex.App.—Houston [1st Dist.] 1995, no writ). The outcome of an election is "materially affected" when a different and correct result would have been reached in the absence of the irregularities. *Olsen*, 24 S.W.3d at 610; *see also Slusher*, 896 S.W.2d at 241; *Guerra v. Garza*, 865 S.W.2d 573, 576 (Tex.App.—Corpus Christi 1993, writ dism'd w.o.j.); *Green v. Reyes*, 836 S.W.2d 203, 208–11 (Tex.App.—Houston [14th Dist.] 1992, no writ).

The contestant's burden is a heavy one and the declared results of an election will be upheld in all cases except where there is clear and convincing evidence of an erroneous result. *Olsen*, 24 S.W.3d at 610; *Reyes v. City of Laredo*, 794 S.W.2d 846, 848 (Tex.App.—San Antonio 1990, no writ). The clear and convincing standard requires more proof than the preponderance of the evidence standard in ordinary civil cases, but less than the reasonable doubt standard in criminal cases. *Olsen*, 24 S.W.3d at 610; *In re K.C.M.*, 4 S.W.3d 392, 395 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). This standard is the degree of proof that will produce in the mind of the trier of fact a "firm belief or conviction" as to the truth of the allegations sought to be proved. *K.C.M.*, 4 S.W.3d at 395. This Court reviews the record in an election contest to see whether the trial court abused its discretion. *Olsen*, 24 S.W.3d at 610; *Honts*, 975 S.W.2d at 822; *Slusher*, 896 S.W.2d at 241.

## Sufficiency of the Trial Evidence

In issue two, Price challenges the sufficiency of the evidence presented at the July 13 trial, arguing that there is no evidence that the election irregularities "materially affected the outcome of the election," i.e., that at least 69 votes were affected by the irregularities. Thus, Price asserts that the trial court abused its discretion by setting aside the election outcome.

In nonjury cases in which both findings of fact and a reporter's record have been filed, we must review the sufficiency of the evidence under the same standards utilized for jury-tried cases. *Slusher*, 896 S.W.2d at 241; *Stern v. Wonzer*, 846 S.W.2d 939, 942 (Tex.App.—Houston [1st Dist.] 1993, no writ). In reviewing the legal sufficiency of the evidence, we consider only the evidence and inferences that, when viewed in their most favorable light, tend to support the finding, and disregard all evidence and inferences to the contrary. *Slusher*, 896 S.W.2d at 241; *Stern*, 846 S.W.2d at 942. If there is any evidence of probative force, we must overrule the point and uphold the finding. *Slusher*, 896 S.W.2d at 241; *Stern*, 846 S.W.2d at 942.

In reviewing the factual sufficiency of the evidence, we examine all of the evidence, both the evidence that supports the finding and the evidence that controverts the finding. *Slusher*, 896 S.W.2d at 241; *Stern*, 846 S.W.2d at 942. We will set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Slusher*,

896 S.W.2d at 241; *Stern*, 846 S.W.2d at 942.

During the very brief trial, seven witnesses testified. We will summarize their testimony:

1. **Rochon Chatman** was passing out flyers for Lewis at the precinct 313 polling place on the morning of the election. He testified that an election worker, known only as "Joe," testified that Lewis was not on the ballot. He saw 10–15 voters go in the polling place and then come out; he did not know whether or not they voted. He stayed at the precinct 313 polling place for about 10 minutes before leaving to work at City Hall. During that time no one told him that they could not vote for Lewis.

2. **Caroline Rabago,** a voter in precinct 313, district one testified that Price and Lewis's election was not on her ballot, but she voted anyway. She did not complain to election officials about not being able to vote in the city council race. She and her husband were the first voters at precinct 313 on election day. They did not see any other voters present.

3. **Henry Rabago,** Caroline's husband, testified that he and his wife were the first to arrive to vote on election day. He noticed that Lewis and Price were not on the ballot, but the candidates for the district 2 council position were. He did not complain or ask for the correct ballot, although he had intended to vote for Lewis. About a week after the election, he reported the incident to Lewis when she was going door to door asking questions about the ballot.

4. **Barbara Lawrence,** the City Secretary for Galveston, testified that in precinct 313, district one voters were given ballots for the district two council race; no district one ballots were distributed. Twenty-eight district one voters errone-ously cast ballots in the district two race. She testified that on Monday after the election she received two complaints regarding the district one council race—one from Lewis and one from a voter in a precinct other that 313, who claimed that she and her son had received the wrong ballot. She received no other complaints about the election, but she could not say how many voters may have walked away from precinct 313 without voting.

5. **Sharon Lewis,** the contestant, testified that on the morning of the election, one of her poll workers, Rochon Chatman, told her that she was not on the ballot in precinct 313. She testified that she reported the situation to the precinct judge, who told her that she did not receive any district one ballots. Lewis talked to 15–16 people who had not voted yet outside the polling place. Several told her that they were not going to vote. She did not know whether they would have voted for her. She called the City Secretary on Monday to report her complaints.

6. **Booker Price,** the contestee, testified that he believed that had any of the voters in precinct 313, district one complained, the City Secretary would have corrected the problem. He also believed that he could have picked up some of the votes.

7. **Lois Holden,** the election judge for precinct 313, testified that she did not recall talking to Lewis the day of the election about her name not being on the ballot. Holden testified that only one voter was turned away on election day because he was not registered in the precinct. No one complained about receiving a district two ballot or that they were not allowed to vote in the district one council race. She did not know of

any voter refusing to vote because of the ballot mistake.

From this testimony, we conclude that the following facts are undisputed. Voters from districts one and two are included in precinct 313. However, on election day, only district two ballots were distributed at precinct 313. On election day, 157 total votes were cast in precinct 313. Of this 157, 28 were erroneously cast by district one voters. Of these 28 erroneously cast votes, it is unknown how many would have voted for Lewis or how many would have voted for Price. As the trial court stated in his findings of fact, "It is impossible to determine the total number of voters who left the polls when information spread that no District 1 ballots were available."

### The Court's Ruling

Immediately following the testimony, the trial court ruled from the bench, as follows:

[The court] find[s] based on clear and convincing evidence that some number of people were actually prevented from voting for the candidate of their choice or for that matter for any candidate in the District 1 race. *If the court could be absolutely certain that the number of people thus prevented from voting was smaller than the difference between the actual votes case for Mr. Price and those for Ms. Lewis the Court might still say with some confidence that the vote was for Mr. Price and that I could count the total number of votes in such a way that I could declare the results.* I thought perhaps that I could do that by calculating the number of people who actually showed up to vote and then figuring out how many people actually voted for Mr. Price or for Ms. Lewis and subtract from that number or subtract that number rather, the total of the Price Lewis votes from the people who

actually showed up and determine how many people got a ballot and then didn't vote because they couldn't vote for either because they didn't have the right ballot, but I was then reminded in the testimony that as the day progressed at Precinct 313 there was conversation outside the polling place about the ballots not being available. And I cannot overlook the fact that this may have discouraged additional people from voting. *I'm unable to say by clear and convincing evidence that that number of people did not exceed forty-one. I therefore am unable to say by clear and convincing evidence that Mr. Price would have been the winner had the ballots been available.* In all candor I believe that probably Mr. Price would have been the winner anyway but I can't say that. .... I therefore declare the results void and order a new election for August the 12th, 2000. (Emphasis added).

The trial court also signed a written order on July 20, that incorporated the above-referenced rendition. The trial court's conclusions of law contained the following:

The mistake associated with the ballots in Precinct 313 prevented any of the 28 known voters from voting in the proper election and caused other unknown voters to leave the polls entirely.

### Analysis

■ Although the trial court correctly applied the "clear and convincing" standard of review, and his conclusions of law recite that the burden of proof was on the election contestant, the trial court's remarks from the bench show that actually placed the burden of proof on the contestee. It was not Price's burden to show that he would have won the election even without a ballot error. It was Lewis's burden to show that, but for the ballot error, a "different and correct result"

would have been reached; i.e., that she would have won the election. Thus, the issue we must decide is this: Did Lewis meet her burden of proof to show by clear and convincing evidence that at least 69 voters were prevented from voting for her as a result of the ballot defect? After reviewing the evidence in the light most favorable to the judgment, we conclude Lewis's evidence was legally insufficient to show the errors "materially affected the outcome of the election."

Admittedly, at least 28 voters in precinct 313, district one were prevented from voting for the candidate of their choice in the council race because they were given, and voted, in the district two council race. Presumably, witnesses Henry and Caroline Rebago were included in this number. If all 28 votes were placed in Lewis's column, she still must show that another 41 voters were prevented from voting for her because of the ballot error. This she cannot do.

Although Lewis testified that some 15–16 people told her they were not going to vote because the district 1 race was not on the ballot, she was unable to say that those voters would have voted for her, and none of these people were brought forth as witnesses. Only one person, besides Lewis, complained to the City Secretary about not being able to vote for Lewis, and that voter was not from precinct 313. No one, other that Lewis, complained to the election judge about not being able to vote for Lewis. Two voters, Caroline and Henry Rebago, testified that they were unable to vote for Lewis because her race was not on the ballot they were given. We have already included their votes in Lewis's total as part of the 28 district one votes that were erroneously cast in the district two race. There is simply no clear and convincing evidence showing that, other than the 28 miscast votes, that at least 41 other

district one voters were turned away from precinct 313, or left without voting, and that their votes would have gone to Lewis.

We sustain issue two. Accordingly, we need not address any other issues.

Having concluded that Lewis did not meet her burden in the election contest, we reverse the trial court's judgment and render judgment reinstating the outcome of the May 6, 2000 election.