NO. 07-07-0427-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JULY 3, 2008
_____

JIMMY MCCURRY, APPELLANT

V.

KENT LEWIS, APPELLEE
_____

FROM THE 154TH DISTRICT COURT OF LAMB COUNTY;

NO. 17,092; HONORABLE FELIX KLEIN, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.


**OPINION**


In this appeal of an election contest, appellant and contestee below Jimmy McCurry asks us to set aside the trial court's judgment voiding the November 2006 general election for Lamb County commissioner precinct two and reinstate the original final canvas, which showed him the winner over appellee and contestant below Kent Lewis. Finding the trial court did not abuse its discretion in declaring the election void, we affirm its judgment.

Background

Following the November 27, 2006, final canvassing of votes in the election for Lamb County commissioner precinct two, McCurry appeared the winner by a margin of three votes. Lewis filed an election contest on December 21 *inter alia* complaining that an error in voter registration rolls prevented over a dozen persons from voting for Lewis. A bench trial was held October 4, 2007, and at its conclusion the court found it could not declare the true outcome of the election. It declared the election void and ordered a new election. McCurry requested and obtained findings of fact and conclusions of law and timely appealed. Among its findings, the court found an election official[1] prevented eligible voters from voting and the number of eligible voters prevented from voting "was sufficient to have or could have changed the outcome of the election."

Issue One: *Is timely notice to the Secretary of State jurisdictional?*

McCurry presents four issues. In his first issue, McCurry argues the trial court was without subject matter jurisdiction of the election contest because Lewis did not deliver a copy of his petition to the Texas Secretary of State within the time required by the Election

---

[1] "Election official" means an election officer or other person officially involved in the administration of the election. Tex. Elec. Code Ann. § 221.003(a)(2)(A) (Vernon 2003).

Code.[2] We review a trial court's order granting or denying a plea to its subject matter jurisdiction *de novo*. *Westbrook v. Penley,* 231 S.W.3d 389, 394 (Tex. 2007).

It is undisputed that Lewis delivered a copy of his petition to the secretary of state on January 11, 2007, some forty-five days after the election's official result was determined. McCurry filed a plea to the trial court's jurisdiction asserting the untimely delivery of the petition to the secretary of state deprived the court of jurisdiction. The court denied McCurry's jurisdictional challenge on the day of trial. In a conclusion of law, it held that delivery of notice to the secretary of state is an administrative act and failure to strictly comply was not jurisdictional.

---

[2] Election Code § 232.008, entitled "Filing Period for Petition," provides:

(a) A contestant may not file the petition in an election contest earlier than the day after election day.

(b) Except as provided by Subsection (c), a contestant must file the petition not later than the 30th day after the date the official result of the contested election is determined.

(c) A contestant must file the petition not later than the 10th day after the date the official result is determined in a contest of:

(1) a primary election; or

(2) a general or special election for which a runoff is necessary according to the official result or will be necessary if the contestant prevails.

(d) A contestant must deliver a copy of the petition to the secretary of state by the same deadline prescribed for the filing of the petition.

Tex. Elec. Code Ann. § 232.008 (Vernon 2003). Hereinafter all statutory citations designated only by the word "section" are to Tex. Elec. Code Ann. (Vernon 2003).

3

In support of his jurisdictional argument, McCurry contends that prior to enactment of the current Election Code in 1985 a substantial body of caselaw developed for the proposition that notice of a contest suit was jurisdictional.[3]  The Austin Court of Appeals, however, held in *Honts v. Shaw,* 975 S.W.2d 816, 820 (Tex.App.–Austin 1998, no pet.), that the requirement of section 232.008(d) is not jurisdictional.  We agree with the Austin court's holding, and the rationale expressed in its opinion.

McCurry argues *Honts* was wrongly decided.  He points to caselaw holding that when the legislature amends a statute, it is presumed to have taken notice of its prior interpretation by the courts.  *See Walker v. Thetford,* 418 S.W.2d 276, 292 (Tex.Civ.App.–Austin 1967, writ ref'd n.r.e.).  McCurry contends the legislature thus is presumed to have been aware of caselaw holding other requirements set forth in section 232.008 to be jurisdictional, leading to the conclusion it placed the requirement of notification of the secretary of state within that section with the intention it also be jurisdictional.  A similar argument was rejected by the court in *Nichols v. Seei,* 97 S.W.3d 882, 884 (Tex.App.–Dallas 2003, no pet.), dealing with the similar notice requirement of section 233.006(c).[4]  We reject it here, for the same reasons cited by the Dallas court.

---

[3] *See Jordan v. Norman,* 711 S.W.2d 358, 359 (Tex.App.–Beaumont 1986, no writ) (decided under former Election Code); *Mitchell v. Carroll Indep. Sch. Dist.,* 435 S.W.2d 280, 283 (Tex.Civ.App.–Fort Worth 1968, writ dism'd w.o.j); *Ex parte Progreso Indep. Sch. Dist.,* 650 S.W.2d 158, 160 (Tex.App.–Corpus Christi 1983, writ ref'd n.r.e.); *Walker v. Thetford,* 418 S.W.2d 276, 280 (Tex.Civ.App.–Austin 1967, writ ref'd n.r.e.).

[4] Chapter 233 of the Election Code addresses the contest of an election on a measure. § 233.001.  At the same time the legislature enacted § 232.008(d), it amended § 233.006 by adding § 233.006(c).  Acts 1997, 75th Leg., R.S., ch. 1349, §§ 69, 70, p. 5096.  The language of the two provisions is identical.

Finding the trial court did not err by overruling McCurry's plea to the jurisdiction, we overrule his first issue.

Issues Two & Three: *Evidence Supporting Trial Court's Overturning Election*

We will discuss McCurry's second and third issues together. By his second issue McCurry challenges the legal sufficiency of the evidence supporting findings of fact two and three, in which the court found that an election official prevented eligible voters from voting in a number sufficient to change the election result. McCurry's third issue contends Lewis failed to carry his burden of proving the outcome of the election was materially affected by irregularities of election officials.[5]

"The standard of review in an appeal from a judgment in an election contest is a determination whether the trial court abused its discretion." *Tiller v. Martinez,* 974 S.W.2d 769, 772 (Tex.App.–San Antonio 1998, pet. dism'd w.o.j.). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985). Thus we may not reverse the judgment of the trial court, if the trial court acted within its discretion, simply because we might have reached a different result. *Id.* at 242.

Under the abuse of discretion standard, the sufficiency of evidence supporting the trial court's findings is a factor we consider in determining whether the court abused its

_____

[5] By cross-issue, Lewis counters that if he must prove the voting intent of eligible voters then the trial court erred by precluding admission of such evidence. Through an offer of proof, Lewis preserved testimony that his witnesses intended to vote for him. We do not reach his cross-issue.

discretion. *Willet v. Cole,* 249 S.W.3d 585, 591 n.4 (Tex.App.–Waco 2008, no pet.)*; In re J.R.C.,* 236 S.W.3d 870, 875 (Tex.App.–Texarkana 2007, no pet.). In a non-jury case, when the appellate record includes both findings of fact and conclusions of law and a reporter's record, we review the sufficiency of the evidence under the same standards applied in cases tried by jury. *Slusher v. Streater,* 896 S.W.2d 239, 241 (Tex.App.–Houston [1st Dist.] 1995, no writ). In reviewing the legal sufficiency of the evidence under a clear and convincing standard, we look at all the evidence, in the light most favorable to the judgment, to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 265-66 (Tex. 2002). We disregard any contrary evidence if a reasonable trier of fact could do so, but we do not disregard undisputed facts. *In re J.L.,* 163 S.W.3d 79, 85 (Tex. 2005).

To set aside the outcome of an election, the contestant must prove by clear and convincing evidence that a violation of the Election Code occurred, and it materially affected the outcome of the election. *See Willet,* 249 S.W.3d at 589; *Olsen v. Cooper,* 24 S.W.3d 608, 610 (Tex. App.–Houston [1st Dist.] 2000, no pet.); *Honts,* 975 S.W.2d at 822; *Slusher,* 896 S.W.2d at 241; Tex. Elec. Code Ann. § 221.003 (Vernon 2003).

A court trying an election contest shall attempt to ascertain whether the outcome shown by the final canvass was not the true outcome because illegal votes were counted or an election official prevented eligible voters from voting, failed to count legal votes, or engaged in other fraud, illegal conduct, or mistake. Tex. Elec. Code Ann. § 221.003 (Vernon 2003).

6

The outcome of an election is "materially affected" when a different and correct result would have been reached in the absence of irregularities, *see Price v. Lewis,* 45 S.W.3d 215, 218 (Tex.App.–Houston [1st Dist.] 2001, no pet.), or irregularities in the conduct of the election render it impossible to determine the majority of the voters' true will. *Guerra v. Garza,* 865 S.W.2d 573, 576 (Tex.App.–Corpus Christi 1993, writ dism'd w.o.j.); *Frias v. Board of Trustees,* 584 S.W.2d 944, 948 (Tex.Civ.App.–El Paso 1979, writ ref'd n.r.e.), *cert. denied,* 444 U.S. 996, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979); Tex. Elec. Code Ann. § 221.012(b) (Vernon 2003).

The facts leading to the contest are largely undisputed. Because officials used a map containing errors when precincts were redistricted after the 2000 census, some Lamb County registered voters were assigned, by mistake, to election precinct two, when they actually resided in election precinct six.[6] Election precinct six is within Lamb County commissioners' precinct two, election precinct two is not. At the 2006 general election, the voting box for election precinct two was located at the Littlefield junior high school, and the box for election precinct six was located at the Texas Department of Transportation building. Because commissioner precinct two did not include the area within election precinct two, the election for commissioner precinct two did not appear on the ballot given voters at the junior high school. Lamb County voter registrar Linda Charlton learned of the errors in the residents' election precinct assignment within thirty days of the election but testified this was an insufficient period for remedial measures. She believed affected voters could vote provisionally but decided to leave the matter to the election judges.

---

[6] The mistake affected voters residing in a small area of Littlefield, the county seat.

Rusty Smith testified he presented for voting at the TxDOT building but was told to call the courthouse because his name did not appear on the voting list although he was a registered voter. An unidentified person at the courthouse directed Smith to the junior high school where he voted a ballot that did not include the precinct two commissioner's election.

Rudy Ayala had voted in election precinct two at the junior high school for about forty years. While voting in the 2006 general election, he noticed his ballot did not include the precinct two commissioner's election. Ayala pointed out the omission to an election judge who told him, "'If his name is not on there, you don't vote.'"

Albert Ayala is the son of Rudy Ayala. Albert chose to vote electronically and like his father pointed out to an election judge that the precinct two commissioner's race was absent from the ballot. Like his father, Albert was told he could not vote in that race if the candidate did not appear on the ballot. Albert testified the election judge made a telephone call, but he was not offered a provisional ballot or other possible solution.

Mary Cristan attempted to vote at the Littlefield city hall but was directed to the junior high school where she voted a straight party ticket on a paper ballot. After the election, she learned from Lewis that the precinct two commissioner's race did not appear on the ballot at the junior high school.

Geneva Logan lived at the same Littlefield address for over forty years and always voted at the junior high school. For the 2006 general election, her name was on the voter list at the junior high school and she voted a straight ticket on a paper ballot. After voting, she learned the precinct two commissioner's race did not appear on the ballot.

8

Amanda Hodge participated in early voting at the city hall and noticed the precinct two commissioner's race did not appear on the ballot she received. When she inquired of an election official about the absence, Hodge was told the ballot was correct according to the information on Hodge's voter registration card.

On election day, Robert Rivas went to the Lamb County courthouse and asked where he should vote. An unidentified person, checking voter registration cards, directed him to the junior high school. Rivas' name appeared on the voting list at the junior high school but the precinct two commissioner's election did not appear on his ballot.

Molly Rivas is the wife of Robert Rivas. Her voter registration card specified she vote at the junior high school but she learned from her husband that the precinct two commissioner's race did not appear on the ballot at the school. Shortly before the polls closed, Molly went to the polling place at the TxDOT building. An election official told her the commissioner's race appeared on the ballot at that location but the voting list did not include her name. An election official at that location called Charlton about Molly's situation and was told to allow Molly's vote.

*Were eligible voters prevented from voting by an election official?*

The trial court found seven of Lewis' trial witnesses were eligible voters but were prevented from voting in the precinct two commissioner's race.[7] McCurry contends the evidence conclusively establishes each of the voter-witnesses voted, and that no election

---

[7] We refer to the seven, Mary Cristan, Amanda Hodge, Geneva Logan, Albert Ayala, Rudy Ayala, Rusty Smith, and Robert Rivas, as the "voter-witnesses."

9

official, therefore, could have prevented them from voting. But the question is not whether they voted in other races in the 2006 general election; rather, the inquiry is whether election officials prevented eligible voters from voting in the election for commissioner, precinct two. No evidence countered the testimony of the seven voter-witnesses that they did not vote in the election for commissioner, precinct two because the race did not appear on the ballot.

McCurry next argues there was no evidence that an election official prevented an eligible voter from voting. According to trial testimony, Smith, Cristan, and Robert Rivas were directed by an election official to a polling place where they received a ballot that did not contain the precinct two commissioner's race. Rudy Ayala and Albert Ayala questioned the absence of the commissioner's race from their ballots and were told by an election official that they could not vote for a candidate whose name did not appear on the ballot. An election official at city hall told Hodges that the ballot she received, which did not contain the precinct two commissioner's race, was correct according to the information on her voter registration card. Election registrar Charlton was aware of an error in the voter registration cards but left handling the matter to the election judges.

Viewing all the evidence in the light most favorable to the court's finding, we find the court as fact finder could have formed a firm belief or conviction that election officials prevented eligible voters from voting in the precinct two commissioner's race. The trial court did not act on legally insufficient evidence. *See J.F.C.,* 96 S.W.3d at 266.

10

*Did the prevention of voting by eligible voters materially affect the election outcome?*

McCurry's third issue rests on the premise that, to show the prevention of voting by eligible voters materially affected the election's outcome, Lewis was required to prove that a sufficient number of the voters prevented from voting would have voted for him to have changed the election's outcome.

In support of his contention, McCurry refers us to *Price,* 45 S.W.3d 215. There Price won an election over Lewis for the district one seat on the Galveston city council by a 69-vote margin. Lewis contested the election, and evidence showed that ballots for the district one and district two races should have been available at one polling place but only district two race ballots were distributed to the polling place on election day. The trial court found that 28 voters who lived in district one were improperly permitted to vote in the district two race, and that an unknown number of other voters left the polls without voting. The trial court concluded it could not ascertain the true winner of the election, declared it void, and ordered a new election. Price appealed. The appellate court framed the burden of proof for Lewis: "Did Lewis meet her burden of proof to show by clear and convincing evidence that at least 69 voters were prevented from voting for her as a result of the ballot defect?" *Id*. at 221. In finding Lewis did not discharge this burden, the court noted that even if the 28 miscast votes had been cast for Lewis there was not sufficient proof that at least 41 other voters were turned away without voting and their votes would have gone to Lewis. *Id*.

The evidence in *Olsen*, 24 S.W.3d 608 also cited by McCurry, was like that in *Price*. The contestant Cooper lost the race by 75 votes. Although evidence showed that some

11

number of votes were affected by a ballot error and a locked door to the voting place, the appellate court found no clear and convincing evidence that 75 voters were prevented from voting. *Id*. at 613.

In neither *Olsen* nor *Price* did the evidence clearly and convincingly show that the gross number of voters denied the vote by an election official, *without regard to which candidate a voter favored*, was sufficient to have changed the outcome of the election. *Price,* 45 S.W.3d at 221; *Olsen,* 24 S.W.3d at 613. Thus, neither case is dispositive of the issue before us.

Moreover, for two reasons, we do not read *Price* for the proposition that when voting by eligible voters is prevented by an election official the contestant must prove both the number of those prevented from voting and their intended vote. First, such a reading conflicts with Texas Supreme Court caselaw. *See Duncan v. Willis,* 157 Tex. 316, 326-27 & 327 n.2, 302 S.W.2d 627, 634-35 & 635 n.2 (1957) (election code does not authorize voter to testify, after the election, how he or she intended to vote). Second, such a reading runs contrary to an express provision of the Election Code. Under section 221.009(b), an election contested because of illegal votes may be declared void if the number of illegal votes was sufficient to have changed the election's outcome, without a determination of how individual voters voted. Tex. Elec. Code Ann. § 221.009(b) (Vernon 2003); *see Gonzales v. Villarreal*, 251 S.W.3d 763, ___ (Tex.App.–Corpus Christi 2008, pet. dism'd w.o.j.);

*Alvarez,* 844 S.W.2d at 242 (both noting § 221.009); *cf.* Tex. Elec. Code Ann. 221.012(b) (court shall declare election void if it cannot ascertain true outcome).[8]

Despite his reliance on *Price*, McCurry also argues Lewis could not properly show at trial the intended vote of the voter-witnesses and without this evidence he could not meet his burden of proof. We agree with McCurry that sound policy prohibits a voter from testifying in an election contest how the voter intended to vote. *See Duncan,* 157 Tex. at 327-28, 302 S.W.2d at 635 (*quoting Davis v. State ex rel. Wren,* 75 Tex. 420, 428, 12 S.W. 957, 960 (1889)). But we do not agree such evidence was essential to the finding that prevention of voting by eligible voters materially affected the election's outcome. Texas law has long provided otherwise. "If the right of a voter to vote has been denied to any person duly qualified, it may be shown in case of a contest. And if the number of voters whose right has been so denied is large enough to materially affect the result it will vitiate the election." *McCormick v. Jester,* 115 S.W. 278, 285 (Tex.Civ.App. 1909, writ dism'd) (*citing McCreary on Elecs.,* § 527 (4th ed.)). An election's outcome may be materially affected if irregularities in the conduct of the election render impossible a determination of the majority of the voters' true will. *Guerra,* 865 S.W.2d at 576. By the final canvas of votes in the contested race, McCurry prevailed by three votes. In a finding supported by clear and convincing evidence, the trial court found election officials prevented the seven voter-witnesses from voting in the race. Having made such a finding, it was the task of the trial court to ascertain and declare

---

[8] In addition, McCurry's position that a contest based on the prevention of eligible voters from voting requires proof both of a sufficient number of voters to affect the outcome and their intended vote, would appear to render nugatory § 221.012(b) in such cases, because the court could make a calculation and ascertain the true outcome of the election.

the true outcome of the election and, if unable to so, to declare the election void. *See Tiller,* 974 S.W.2d 769, 772; Tex. Elec. Code Ann. §§ 221.003(a)(2)(A) & 221.012(a),(b) (Vernon 2003). Unable to declare the true outcome of the election, the trial court did not abuse its discretion by declaring it void. *See* Tex. Elec. Code Ann. § 221.012 (b). McCurry's second and third issues are overruled.

Issue Four: *Were voters required to mitigate the effect of preventive acts by election officials?*

In his final issue, McCurry challenges the evidentiary strength supporting the court's finding of fact number fourteen wherein it found the voter-witnesses "'were prevented from voting in the election for County Commissioner, Precinct No. 2, Lamb County, Texas, by an election official or other persons officially involved in the administration of the election.'" According to McCurry, the finding is not established by clear and convincing evidence for the singular reason that none of the voter-witnesses "attempted to properly cast a ballot in this race." His argument points to actions he asserts the voters could, and should, have taken to vote in the race despite their mistaken election precinct assignments.[9] We do not agree that the voters' failure to take such actions precluded the trial court from finding they were prevented by election officials from voting in the county commissioner's race. We overrule McCurry's final issue.

_____

[9] For instance, McCurry says the voters could have insisted on a "not on list" affidavit under Election Code section 63.007. Tex. Elec. Code Ann. § 63.007 (Vernon 2003).

Having overruled each of McCurry's issues, we affirm the judgment of the trial court.




James T. Campbell
Justice