



## MEMORANDUM OPINION

No. 04-08-00276-CV

J.C. **PEREZ**, III,
Appellant

v.

Oswald "Wally" **ALANIS**,
Appellee

From the 79th Judicial District Court, Jim Wells County, Texas
Trial Court No. 08-03-46823
Honorable Nelva Gonzales Ramos, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:        Catherine Stone, Justice
               Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice

Delivered and Filed:   August 13, 2008

AFFIRMED

In this election contest appeal, we must determine whether the trial court abused its discretion in declaring a primary election void and ordering a new election. We affirm the judgment of the trial court.

### BACKGROUND

J.C. Perez, III challenged incumbent Oswald "Wally" Alanis for the position of Jim Wells County Precinct 3 Commissioner in the March 2008 Democratic primary. Perez was declared the

winner by a margin of two votes, and the race was subjected to a recount, which resulted in the same outcome. After determining that several voters who reside in Precinct 3 were incorrectly placed in a different precinct—and thus unable to vote in the Precinct 3 county commissioner election—Alanis filed an election contest, which was heard by the trial court on April 4, 2008. At the bench trial, the following relevant evidence was presented.

Alanis testified that he is the current Precinct 3 Commissioner for Jim Wells County. Alanis stated that Precinct 3 has five election precincts or voting boxes as follows: #3 in Sandia; #8 in Orange Grove; #9 at Alice High School; #20 at Salazar Elementary; and #19 in the central building. Alanis testified that any changes to the precinct boundaries would have to be approved by the Commissioners, and that the Commissioners' Court has never voted to change the boundaries for Precinct 3.

Laura Hatton testified that she lives at 183 County Road 308 in Orange Grove. She early-voted at the courthouse like she always does. While driving home, she realized that she had not voted for Alanis, as she had intended, because the Precinct 3 county commissioner race was not on the ballot; in fact, there was no county commissioner race listed on the double-sided ballot.

Jesus Garcia testified that he lives off FM 2508. On election day, Garcia attempted to vote at Alice High School but was sent to Mary R. Garcia School by an election judge. He voted there and noticed that Alanis's name was not on the ballot. One to two days later, he went to the voter registrar's office to inquire about the situation. Garcia had voted at the high school before and has always voted for Alanis since moving to the county; he works part-time for Alanis. Garcia's mailbox is located near the boundary line between Precinct 3 and Precinct 4.

Pearlie Jo Valadez, the Jim Wells County Elections Administrator, testified that she uses the maps provided by the 911 coordinator to determine precinct boundaries in rural areas. Valadez

admitted that "there have been some errors made through the 911 addressing" regarding the voters residing on County Road 308. Her records showed that in 2006, Hatton was changed from voting precinct 8, which is part of Commissioner's Precinct 3, to voting precinct 2, which is part of Commissioner's Precinct 2. Hatton voted in Commissioner's Precinct 2 in November 2006 and February 2008. Valadez stated that Garcia voted in voting precinct 10, which is part of Commissioner's Precinct 4, in November 2006 and March 2008. She also stated that Garcia listed his address as 2190 FM 2508 on his voter registration application, which puts him in voting precinct 10 according to the 911 map. Valadez's records document that even though Garcia never changed his address, in 2006 he was moved from voting precinct 9A, which is part of Commissioner's Precinct 3, to voting precinct 10. Neither Hatton nor Garcia were notified of the precinct changes by the county elections office.

After hearing the above evidence, and allowing additional briefing, the trial court declared the election void and ordered the county elections administrator to conduct a new election for the position of Jim Wells County, Commissioners' Court–Precinct 3. The final judgment recites:

> The Court finds that: (a) the margin of victory between the contestants in the Jim Wells County, Commissioner's Court–Precinct 3 election held on March 4, 2008 was two (2) votes and (b) voters Laura Hatton and Jesus Garcia reside in Commissioner's Court–Precinct 3, but were prevented from voting for Contestant Alanis because Hatton was mistakenly placed in Precinct 2 and Garcia was mistakenly placed in Precinct 4.

The trial court issued the following pertinent findings of fact:

3. Two (2) voters, Laura Hatton and [Jesus] Garcia, resided in Commissioner's Court, Precinct 3, but were prevented from voting for Alanis because Hatton was mistakenly placed in Precinct 2 and Garcia was mistakenly placed in Precinct 4.
4. At least ten (10) voters who resided in Commissioner's Court, Precinct 3 were mistakenly placed in other voting precincts. Thus, they were prevented from voting in Precinct 3.

On appeal, Perez contends that the trial court abused its discretion in finding that Hatton and Garcia were prevented from voting for Alanis and in declaring the election void. He also argues that there is no evidence or, alternatively, insufficient evidence to sustain the finding that at least ten voters were prevented from voting in the Precinct 3 race.

### APPLICABLE LAW AND STANDARD OF REVIEW

The purpose of an election contest is to determine whether the outcome of an election is correct. TEX. ELEC. CODE ANN. § 221.003(a) (Vernon 2003); *Rodriguez v. Cuellar*, 143 S.W.3d 251, 260 (Tex. App.—San Antonio 2004, pet. dism'd). To overturn an election, the contestant must prove by clear and convincing evidence that voting irregularities materially affected the election results. *Tiller v. Martinez*, 974 S.W.2d 769, 772 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.); *see also Alvarez v. Espinoza,* 844 S.W.2d 238, 242 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.). Voting irregularities occur when illegal votes are counted or an election official prevents eligible voters from voting, fails to count legal votes, or engages in other fraud or illegal conduct, or makes a mistake. TEX. ELEC. CODE ANN. § 221.003 (Vernon 2003); *Tiller*, 974 S.W.2d at 772. The outcome of an election is "materially affected" when a different and correct result would have been reached in the absence of the irregularities. *Willet v. Cole*, 249 S.W.3d 585, 589 (Tex. App.—Waco 2008, no pet.). If the contestant meets his burden of proof and the trial court can ascertain the true outcome of the election, it shall declare the outcome; however, if the trial court cannot ascertain the true outcome of the election, it must declare the election void. TEX. ELEC. CODE ANN. § 221.012 (Vernon 2003).

We review an appeal from a judgment in an election contest for an abuse of discretion. *Tiller*, 974 S.W.2d at 772. A trial court commits an abuse of discretion if its decision is so arbitrary

and unreasonable that it rises to the level of a clear and prejudicial error of law. *Gonzalez v. Villarreal*, 251 S.W.3d 763, 775 (Tex. App.—Corpus Christi 2008, pet dism'd). In reviewing a court's factual determinations for an abuse of discretion, we may not substitute our judgment for that of the trial judge. *Id.* We defer to the trial court, as the trier of fact, in its determination of both the credibility of the witnesses and the weight of their testimony. *Slusher v. Streater,* 896 S.W.2d 239, 245 (Tex. App.—Houston [1st Dist.] 1995, no writ). Moreover, the trial court possesses the discretion to resolve any conflicts arising from the evidence. *Alvarez,* 844 S.W.2d at 246. No abuse of discretion occurs where the trial court bases its decision on conflicting evidence. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). In sum, we may not overturn the trial court's judgment unless it is apparent from the record that the trial court could have reached only one result. *Gonzalez*, 251 S.W.3d at 775; *Tiller*, 974 S.W.2d at 777.

In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: "(1) did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion?" *See Gonzalez*, 251 S.W.3d at 774 n.16 (citing *Lindsey v. Lindsey,* 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.)). An abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

## DISCUSSION

Perez stresses that the crux of this case is that each voter bears the duty to see that he casts a vote for his favored candidate. Initially, Perez argues that no voting irregularities occurred because the two voters at issue were not prevented from voting. To the contrary, Hatton and Garcia actually

voted, and furthermore, they neither questioned the fact that Alanis was not on the ballot while at the polling site nor requested a provisional ballot. Perez asserts that the voters had an affirmative duty to correct the error on their voter registration card pursuant to the Election Code. Additionally, he contends the voters should be estopped from complaining that they were unable to vote for Alanis because they each voted in the wrong precinct in the previous election.

In an analogous case from the Amarillo Court of Appeals, the contestant filed an election contest when he lost the precinct 2 county commissioner race by three votes. *McCurry v. Lewis*, No. 07-07-0427-CV, 2008 WL 2627074, at \*1 (Tex. App.—Amarillo July 3, 2008, no pet. h.). It was largely undisputed that because election officials used a map containing errors when precincts were redistricted, some registered voters were mistakenly assigned to the wrong election precinct. *Id.* at \*3. Upon finding that an election official prevented eligible voters from voting, and that the number of eligible voters prevented from voting materially affected the outcome of the election, the trial court declared the election void and ordered a new election. *Id.* at \*4-6. Holding that there was no abuse of discretion, the court of appeals affirmed the judgment of the trial court. *Id.* at \*7.

We find *McCurry* instructive as to several of Perez's arguments. We are similarly presented with a situation where voters, through no fault of their own, were placed in the incorrect voting precinct. Valadez testified that her office used the 911 maps to determine the precinct ranges and that, as a result, some errors were made. It was undisputed that Hatton physically resides in Commissioner's Precinct 3, and while Perez does not concede that Garcia resides in Precinct 3, Garcia testified at trial that he has resided in Precinct 3 for years and he also marked the location of his residence within Precinct 3 on the Jim Wells County map; this testimony was not refuted. Based on this evidence, we cannot conclude that the trial court abused its discretion in finding that Alanis

met his burden of proving that an election official prevented eligible voters from voting. TEX. ELEC. CODE ANN. § 221.003(a)(2)(A); *Tiller*, 974 S.W.2d at 772.

We disagree with Perez's contention that because Hatton and Garcia actually cast ballots, they were not "prevented from voting." In *McCurry*, the voters at issue voted, but were prevented from voting in the county commissioner election for the commissioner's precinct in which they actually resided. The court of appeals held that even though the voters cast a ballot, they were still prevented from voting: "But the question is not whether they voted in other races in the 2006 general election; rather, the inquiry is whether election officials prevented eligible voters from voting in the election for commissioner, precinct 2." *McCurry*, 2008 WL 2627074, at *4. Similarly, in our case, even though Hatton and Garcia voted, they were denied the opportunity to vote in the election for the commissioner's precinct in which they reside. We cannot agree that a mistake made by the election officials should prevent them from voting in the appropriate county commissioner race. *See Graham v. Villareal*, 242 S.W.2d 258, 259-260 (Tex. Civ. App.—San Antonio 1951, no writ) (citing *Tondre v. Hensley*, 223 S.W.2d 671, 673 (Tex. Civ. App.—San Antonio 1949, no writ)) ("One who is innocently mistaken or has a bona fide confusion as to the location of precinct boundaries should not be and is not disenfranchised, so long as he in fact lives within the precinct where he presents himself to vote.").

Perez also maintains that Hatton and Garcia cannot impeach their votes by testifying, after the election, that they wanted to vote for Alanis. *See Graham*, 242 S.W.2d at 260 (holding that voters who intentionally and knowingly misrepresented their precinct location should not be permitted to impeach their vote); *Zuniga v. Almaraz*, 514 S.W.2d 331, 333-34 (Tex. Civ. App.—San Antonio 1974, no writ) (holding that "sound public policy" prevents absentee voters from

impeaching their vote after election by testifying that they were not legally entitled to cast an absentee ballot). Perez's reliance on these cases is misplaced. Hatton and Garcia are not attempting to impeach their votes. In fact, they did not vote for a commissioner in the 2008 primary election because there was not a county commissioner race on the ballot for Precincts 2 and 4. Furthermore, Hatton and Garcia did not knowingly or fraudulently misrepresent their precinct location. The error on their voter registration card was caused by the election officials and was unknown to the voters. Likewise, no ill conduct exists on behalf of Hatton or Garcia to estop them from complaining that they were unable to vote for Alanis.

Moreover, we are not persuaded by Perez's assertion that the voters should have corrected the precinct error on their registration card. Perez insists that the Election Code places an affirmative duty on a voter to correct errors—innocent or intentional—relating to his or her voter registration card. Section 15.021(a) provides that a voter shall inform the voter registrar in writing "*if* a voter *discovers* incorrect information on the voter's registration certificate or if any of the information becomes incorrect because of a change in circumstances." TEX. ELEC. CODE ANN. § 15.021(a) (Vernon Supp. 2008) (emphasis added); *see also Major v. Loy*, 155 S.W.2d 617, 623-24 (Tex. Civ. App.—Eastland 1941, no writ) (holding that "if a citizen discovers an error in his poll tax receipt he should take steps to have it corrected by the issuing authority before offering to vote in another district . . ."). The statute requires voters to make corrections only if incorrect information is discovered. Neither Hatton nor Garcia testified that they discovered the error related to their precinct number until after they had voted, nor is it likely that many voters would readily discover such an unapparent error. Accordingly, we do not agree that they were obligated to bring to the attention of the election officials a mistake that they were unaware of and that was created through no fault of their own. *See McCurry*,

2008 WL 2627074, at *6 (holding that voters' failure to take remedial actions to correct voting error did not preclude trial court from finding that voters were prevented by election officials from voting in county commissioner race). Likewise, we are not convinced that, as Perez argues, Hatton and Garcia should have requested a provisional voting ballot. The procedures relating to provisional voting are simply inapplicable to the instant facts. *See* TEX. ELEC. CODE ANN. §§ 63.011; 63.008; 63.009 (Vernon Supp. 2008).

As to the second showing required to set aside the outcome of an election, there is no question that the inability of Hatton and Garcia to vote for Alanis materially affected the outcome of the election. Because there was a two-vote margin, a tie would have resulted had these voters been allowed to vote for Alanis as they testified they intended to do. Because the trial court could not ascertain the true outcome of the election, it correctly declared the election void. TEX. ELEC. CODE ANN. § 221.012(b); *see also Tiller*, 974 S.W.2d at 772.

We conclude that the trial court's finding that Hatton and Garcia were prevented from voting for Alanis because they were placed in the wrong voting precinct by the County Elections Administrator is supported by sufficient evidence. The fact that Hatton and Garcia were prevented from voting materially affected the outcome of the election. Accordingly, the trial court did not abuse its discretion in voiding the election because the true outcome of the election could not be determined. Perez's first issue is overruled.

Because our resolution of the first issue is dispositive of the appeal, it is unnecessary to address Perez's remaining issues. The judgment of the trial court is affirmed.


Phylis J. Speedlin, Justice