

# NUMBER 13-19-00407-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

BENJAMIN "BEN" ARJONA,

Appellant,

v.

MENTOR CANTU,                                                                Appellee.

## On appeal from the 389th District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Benavides

By one issue, appellant Benjamin "Ben" Arjona challenges the trial court's reversal

of an election contest for Hidalgo Independent School District Board of Trustees, Place

5. Arjona argues that the trial court abused its discretion when it found that fifty-two votes

were ineligible for assistance under the Texas Election Code § 64.031 and ordered a new

election. *See* TEX. ELEC. CODE ANN. § 64.031. We reverse and remand.

## I.   BACKGROUND

The election for Place 5 was held on November 6, 2018. When tallied, the results showed that Arjona received 1,007 votes and appellee Mentor Cantu received 964 votes. Cantu filed this election contest challenging the difference of votes stating they were illegally cast, cast by voters who were assisted when ineligible for assistance, or violated the mail-in ballot regulations.

A bench trial was held where numerous witnesses testified regarding their voting in the Place 5 election but we narrow our background to the sixteen voters who were disqualified because they were not eligible to be assisted under Texas Election Code § 64.031. *See id.* The trial court made findings of fact and conclusions of law and stated:

10.   On Mentor Cantu's challenge of voters who were assisted at the time that he or she voted in person, the Court finds by clear and convincing evidence that the following voters were not eligible to be assisted; thus, under the Texas Election Code, their ballots cannot be counted:

　　a.　　Maria De Los Angeles Ramirez
　　b.　　Marivel Trevino
　　c.　　Maria Gloria Martinez
　　d.　　Martin Valdez
　　e.　　Sylvia Quiroga
　　f.　　Hilda Porras
　　g.　　Maria Nieto
　　h.　　Gloria Molina
　　i.　　Maria Moreno
　　j.　　Ricardo Quintanilla
　　k.　　Francisco Resendez Martinez
　　l.　　Sandra Luz Villalobos
　　m.　　Elvira Puente
　　n.　　Maria Antonio Soto
　　o.　　Pascual Perez
　　p.　　Marcelino Carmona

2

The voters listed all testified during the trial. First, Maria De Los Angeles Ramirez stated that when she went to the polling place to vote in person, she asked for someone to explain the computer to her, but the assistant, Maria Pena,[1] did not tell her how to vote or who to vote for. Second, Marivel Trevino explained that since she has polio in her right leg and uses crutches to walk. Due to her ailment, she asked for assistance at the polling location and someone brought the voting machine to her vehicle, so she did not have to walk. Trevino stated that Pena drove her to the polling location but stepped out of the vehicle while Trevino voted.

Third, Maria Gloria Martinez testified that she was assisted by Arlette Cavazos at the polling location but that she marked her own ballot and voted for the candidates of her choice. Fourth, Martin Valdez stated he asked for assistance with the voting machine because he did not know how to operate it. Valdez said that Pena came to explain how to use the voting machine but that he voted for the people he chose.

Fifth, Sylvia Quiroga testified that she remembered voting at the polling place, but she did not recall if the ballot was in English or Spanish or even remember marking the ballot. Quiroga also stated that her sister-in-law went to the polling location with her but did not say if she assisted her or not. Sixth, Hilda Porras explained that at the polling location, Pena turned on the machine for her, that Porras's ballot was in Spanish, and that she marked the ballot based on her own choosing.

Seventh, Maria Nieto testified that the person who assisted her only opened the

_____

[1] The different individuals mentioned as assistants in this case are only identified by name. The parties did not identify which candidates the assistants were associated with during trial. We explain the testimony in the same manner as it was explained during trial.

3

voting machine and turned it on for her. Nieto stated she voted for the candidates she chose. Another voter, Gloria Molina, said she was assisted by Gloria Cortez, who showed her how to operate the voting machine. Molina stated she voted for the candidates of her choice and was not aware that an election worker could have helped her with the voting machine.

Ninth to testify was Maria Moreno who explained that she requested someone to assist her with turning on the voting machine because she did not know how to operate it. Moreno said no one told her who to vote for, and she made her own decisions. Tenth, Ricardo Quintanilla said he was assisted by Cavazos, who stood with him while he made his choices, but he stated he voted for the people he wanted. Quintanilla also explained that another person opened the voting machine for him.

Eleventh, Francisco Resendez Martinez, who was assisted by Pena, said that she only showed him how to use the voting machine because it was his first time voting. Martinez also testified that election workers told him to ask someone from the candidate tents outside of the polling location to help him, but no one told him who he should vote for. Next, Sandra Luz Villalobos stated that a woman was assigned to help her and explained how to use the voting machine, but the woman did not tell her who to vote for.

Thirteenth, Elvira Puente testified that she was assisted by Maria Graciela Martinez, her daughter, but Elvira marked her own ballot. Fourteenth, Maria Antonio Soto explained that she voted from her vehicle. Soto stated a man brought the voting machine out to her vehicle, that she asked him to explain how it worked because those voting machines were new, and then she marked her own ballot. When shown that the voting

4

register said Pena assisted her, Soto said a man helped her, not Pena.

Fifteenth, Pascual Perez testified that he previously worked for Rodolfo Franz,[2] that someone assisted him with the voting machine but he does not remember who, and that he voted for the people listed on a paper he was given outside by the campaign workers. Finally, Marcelino Carmona stated he was not sure if he was living in the city of Monte Alto during the Hidalgo elections or not. Carmona said he came and voted, that someone helped him, and he did not remember who he voted for but that it was by his own choice.

Following the testimony of these sixteen voters, as well as many other witnesses, the trial court declared in total that it found that fifty-two voters cast illegible votes in violation of the Texas Election Code, declared the general election void because the "court cannot ascertain the true outcome of the November 6, 2018 General Election for Board of Trustees, Place 5 of the Hidalgo County School District between Mentor Cantu and Benjamin 'Ben' Arjona." The results were declared void, and the trial court ordered another election to be held on November 5, 2019. This appeal followed.

## II.    ELECTION CONTEST

By his sole issue, Arjona alleges the trial court abused its discretion in finding fifty-two votes ineligible and ordering a new election.

## A.    Standard of Review

In reviewing a judgment in an election contest, we must determine if the trial court abused its discretion. *McCurry v. Lewis*, 259 S.W.3d 369, 372 (Tex. App.—Amarillo 2008,

---

[2] Rodolfo Franz was heavily involved in this election fraud contest in relation to the mail-in ballots that were collected, counted, and subsequently disqualified by the trial court.

no pet.); *Gonzalez v. Villarreal*, 251 S.W.3d 763, 774 (Tex. App.—Corpus Christi–Edinburg 2008, pet. dism'd). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Thus, we may not reverse the judgment of the trial court, if the trial court acted within its discretion, simply because we might have reached a different result. *Id.* at 242.

To set aside the outcome of an election, the contestant must prove by clear and convincing evidence that a violation of the election code occurred, and it materially affected the outcome of the election. *See McCurry*, 259 S.W.3d at 372–73; *Perez v. Trevino*, No. 13-17-00087-CV, 2017 WL 2705477, *5 (Tex. App.—Corpus Christi–Edinburg June 22, 2017, no pet.) (mem. op.). Under the abuse of discretion standard, the sufficiency of evidence supporting the trial court's findings is a factor we consider in determining whether the court abused its discretion. *McCurry*, 259 S.W.3d at 372. Additionally, the sufficiency of evidence is not an independent ground of error but rather a relevant factor in assessing whether the trial court abused its discretion. *Woody v. Woody*, 429 S.W.3d 792, 797 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Scoggins v. Trevino*, 200 S.W.3d 832, 836 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.).

In a non-jury case, when the appellate record includes both findings of fact and conclusions of law and a reporter's record, we review the sufficiency of the evidence under the same standards applied in cases tried to a jury. *McCurry*, 259 S.W.3d at 372–73. In reviewing the legal sufficiency of the evidence under a clear and convincing standard, we look at all the evidence, in the light most favorable to the judgment, to

6

determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was true. *Id.* (citing *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002)). We disregard any contrary evidence if a reasonable trier of fact could do so, but we do not disregard undisputed facts. *Id.*

In reviewing the factual sufficiency of the evidence under a clear and convincing standard, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the contestant's allegations." *See In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence could not have been credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

"[D]espite the heightened [clear and convincing] standard of review," we "must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of the witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *O'Cana v. Salinas*, 13-18-00563-CV, 2019 WL 1414021, at *4 (Tex. App.—Corpus Christi–Edinburg Mar. 29, 2019, pet. denied) (mem. op.). The outcome of an election is "materially affected" when a different and correct result would have been reached in the absence of irregularities, or irregularities in the conduct of the election render it impossible to determine the majority of the voters' true will. *See McCurry,* 259 S.W.3d at 373.

**B.    Applicable Law**

In an election contest, the trial court "must attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because," as alleged in this case, illegal votes were counted. TEX. ELEC. CODE ANN. § 221.003(a)(1). An "illegal vote" is a "vote that is not legally countable." *Id.* § 221.003(b). If the court can ascertain the candidate for which an illegal vote was cast, the court must subtract the vote from the candidate's official total. *Id.* § 221.011(a). If the court finds that illegal votes were cast but cannot ascertain which candidate the illegal votes were cast for, it shall consider those votes in making its judgment. *Id.* § 221.001(b). If the number of illegal votes is equal to or greater than the number of votes necessary to change the outcome of the election, the court may declare the election void without attempting to determine how individual voters voted. *Id.* § 221.009(b).

Here, the trial court found that fifty-two votes were void through one means or another, and Arjona won by a difference of forty-three votes. The sixteen votes the trial court found were ineligible for assistance and thus could not be counted under § 64.031 determine whether the election itself is void. Section 64.031 of the election code titled "Eligibility for Assistance" states:

> A voter is eligible to receive assistance in marking the ballot, as provided by this subchapter, if the voter cannot prepare the ballot because of:
>
> (1)    a physical disability that renders the voter unable to write or see; or
>
> (2)    an inability to read the language in which the ballot is written.

TEX. ELEC. CODE ANN. § 64.031. Assistance under the election code states that the person

8

who assists the voter may undertake the following conduct: (1) reading the ballot to the voter; (2) directing the voter to read the ballot; (3) marking the voter's ballot; or (4) directing the voter to mark the ballot. *Id.* § 64.0321.

The trial court found that sixteen voters were assisted under § 64.031 when they did not meet the eligibility requirements for assistance. *See id.* However, as the evidence showed, most of the sixteen voters testified that the only "assistance" they received was from either an election or campaign worker showing them how to operate the voting machine. Soto explained that the voting machines that were used at the Pharr library, where all of the sixteen individuals voted, were "new" machines and she was unsure how to operate them without being shown.

Here, based on the testimony of all but Quintanilla, the individuals did not "receive assistance in marking the voter's ballot." *See id.* § 64.031. Instead, they were shown how the voting machine operated and then left to vote of their own accord. *See Carter v. White,* 161 S.W.2d 525, 526 (Tex. App.—El Paso 1942, no writ) ("We think it clear from the provisions of Art. 3010, R.C.S.1925, and other provisions hereafter noticed, assistance or aid means assistance or aid in the marking of the ballot, and does not extend to and include general instructions and advice, such as given the voters here, which do not and cannot become injurious to contestant. If advice or instruction is such as would amount to assistance in marking the names of candidates on the ballot and resultant injury to contestant, then it would become illegal and render the ballot void."). To interpret the statute any other way would hold that any advances in technology and teaching voters how to use that advanced technology would be "assistance" under the election code,

9

thereby rendering their votes invalid under the provisions of § 64.031.

Therefore, after looking at all the evidence in the light most favorable to the judgment, the trial court could not have reasonably formed a firm belief or conviction that the sixteen voters it found ineligible under § 64.031 were based on the definitions as stated in the election code. *See* TEX. ELEC. CODE ANN. § 64.031; *McCurry*, 259 S.W.3d at 372. Additionally, the evidence presented to the trial court that it could have credited in favor of its finding is not significant enough that the trial court could have reasonably formed a firm belief or conviction to support its finding. *See In re J.F.C.*, 96 S.W.3d at 266. We sustain Arjona's sole issue.[3]

### III.    CONCLUSION

We reverse the trial court's ruling and remand to the trial court for proceedings consistent with this memorandum opinion.

GINA M. BENAVIDES
Justice

Delivered and filed on the
4th day of February, 2021.

---

[3] Because we reverse the trial court's finding regarding the sixteen votes under Texas Election Code § 64.031, the remaining contested votes do not equal forty-three, the number of votes that were the difference between Arjona and Cantu in the election contest. Therefore, we do not need to address the allegations regarding the remaining votes as they are not dispositive. *See* TEX. R. APP. P. 47.1.